# MATTER OF DE LA CRUZ

## In Bond Proceedings Pursuant to 8 C.F.R. § 242.2(d)

### A-41429125

### *Decided by Board July 16, 1991*

(1) Section 242(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(2) (1988), as amended by section 504 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5049, creates a rebuttable presumption against the release of any alien convicted of an aggravated felony from Immigration and Naturalization Service custody unless the alien demonstrates that he is an alien lawfully admitted for permanent residence, is not a threat to the community, and is likely to appear for any scheduled hearings.

(2) Unlawful distribution of a controlled substance involves unlawful trade or dealing, i.e., "trafficking," in a controlled substance under the definition of "aggravated felony" at section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1988), as amended by section 501 of the Immigration Act of 1990, 104 Stat. at 5048.

(3) "Illicit trafficking" in a controlled substance within the meaning of section 101(a)(43) of the Act, as amended, includes "any drug trafficking crime" as defined in 18 U.S.C. § 924(c)(2) (1988).

ON BEHALF OF RESPONDENT:
Brian Drew Perry, Sr., Esquire
P.O. Box 740622
New Orleans, Louisiana 70174

ON BEHALF OF SERVICE:
David M. Dixon
Appellate Counsel

Lorraine L. Griffin
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, and Vacca, Board Members. Dissenting Opinion: Heilman, Board Member.

In a decision dated January 7, 1991, the immigration judge ordered the respondent's release from the custody of the Immigration and Naturalization Service upon posting bond in the amount of $10,000. The Service has appealed. The record will be remanded to the immigration judge.

The respondent is a native and citizen of the Dominican Republic who entered the United States as an immigrant at San Juan, Puerto Rico, on or about July 22, 1988. On October 3, 1989, the respondent was convicted in the United States District Court for the Southern

District of New York for distribution of a controlled substance (cocaine) in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(C), and (b)(2) (1988). In an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) dated August 21, 1990, the respondent was charged with deportability under section 241(a)(4)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4)(B) (1988),[1] for conviction of an aggravated felony, and under section 241(a)(11) of the Act[2] for conviction of a controlled substance violation.

The Service determined that the respondent must be detained without bond pursuant to section 242(a)(2) of the Act, 8 U.S.C. § 1252(a)(2) (1988), on the ground that he is an alien convicted of an aggravated felony as defined in section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1988). The respondent requested a redetermination of his custody status by the immigration judge.

Prior to amendment by the Immigration Act of 1990, section 242(a)(2) required detention without bond of an alien convicted of an aggravated felony. As amended, the provision sets forth an exception to mandatory detention for lawful permanent residents. Specifically, section 242(a)(2) was amended by section 504 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5049 (effective Nov. 29, 1990) to read as follows:

(2)(A) The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense). Notwithstanding paragraph (1) or subsections (c) and (d), but subject to subparagraph (B) the Attorney General shall not release such felon from custody.

(B) The Attorney General shall release from custody an alien who is lawfully admitted for permanent residence on bond or such other conditions as the Attorney General may prescribe if the Attorney General determines that the alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

In his decision rendered on January 7, 1991, the immigration judge did not indicate whether he found the respondent to be an alien convicted of an aggravated felony within the meaning of section 101(a)(43) of the Act. Nor did the immigration judge specify whether he ordered the respondent's release from custody on $10,000 bond

---

[1] Revised and redesignated as section 241(a)(2)(A)(iii) of the Act by section 602 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5080 (effective Nov. 29, 1990).

[2] Revised and redesignated as section 241(a)(2)(B) of the Act by section 602 of the Immigration Act of 1990, 104 Stat. at 5080.

under the authority of section 242(a)(1) of the Act or under new section 242(a)(2)(B).

On appeal the Service contends that the respondent is a lawful permanent resident alien convicted of an aggravated felony and that these bond proceedings are therefore governed by section 242(a)(2)(B) of the Act. The Service claims that pursuant to section 242(a)(2)(B) the immigration judge was authorized to release the respondent on bond only upon a finding that the respondent "is not a threat to the community and that the alien is likely to appear before any scheduled hearings." The Service further contends that the respondent's conviction is a "particularly serious crime" and that he is therefore "a danger to the community" within the meaning of section 243(h)(2)(B) of the Act. *See Matter of Gonzalez,* 19 I&N Dec. 682 (BIA 1988); *Matter of Carballe,* 19 I&N Dec. 357 (BIA 1986). Arguing that "danger to the community" under section 243(h)(2)(B) is synonymous with "threat to the community" under section 242(a)(2)(B) of the Act, the Service concludes that the respondent is not eligible to be released from Service custody.

We have reviewed the record de novo and we find that the respondent is an alien convicted of an "aggravated felony."[3] The respondent was convicted on October 3, 1989, for distribution of a controlled substance (cocaine) in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(C), and (b)(2) (1988). Cocaine is a controlled sub-

---

[3] Section 101(a)(43) of the Act provides as follows:

The term "aggravated felony" means murder, *any illicit trafficking in any controlled substance (as defined in section 102 of the Controlled Substances Act),* including any drug trafficking crime as defined in section 924(c)(2) of title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, any offense described in section 1956 of title 18, United States Code (relating to laundering of monetary instruments), or any crime of violence (as defined in section 16 of title 18, United States Code, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years, or any attempt or conspiracy to commit any such act. *Such term applies to offenses described in the previous sentence whether in violation of Federal or State law* and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years.

Section 101(a)(43) of the Act, as amended by section 501 of the Immigration Act of 1990, 104 Stat. at 5048 (emphasis added). The amendments to section 101(a)(43) by section 501 of the Immigration Act of 1990 apply to offenses committed on or after November 29, 1990, except that the amendments underlined in the above-quoted statute are effective as if included in the original definition of "aggravated felony" added by section 7342 of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, 4469, effective November 18, 1988. *See* section 501(b) of the Immigration Act of 1990, 104 Stat. at 5048.

stance as defined in section 102 of the Controlled Substances Act. *See* 21 U.S.C. §§ 802(6), 812(c) Schedule II(a)(4) (1988); 21 C.F.R. § 1308.12(b)(4) (1990); *United States v. Amidzich*, 396 F. Supp. 1140 (E.D. Wis. 1975). The respondent's offense is a felony. 21 U.S.C. § 841(b) (1988); 18 U.S.C.A. § 3559 (West Supp. 1991). Unlawful distribution of a controlled substance clearly involves the unlawful trade or dealing, i.e., "trafficking," in a controlled substance. *See Black's Law Dictionary* 1340 (5th ed. 1979). Moreover, "illicit trafficking" in a controlled substance within the meaning of section 101(a)(43) includes "any drug trafficking crime" as defined in 18 U.S.C. § 924(c)(2) (1988). A "drug trafficking crime" is "any felony punishable" under the Controlled Substances Act, the Controlled Substances Import and Export Act, or the Maritime Drug Law Enforcement Act. 18 U.S.C. § 924(c)(2) (1988); *see also Matter of Barrett*, 20 I&N Dec. 171 (BIA 1990). The respondent was convicted of a felony under the Controlled Substances Act. We conclude that the respondent is an alien convicted of an "aggravated felony."

As an alien convicted of an aggravated felony, the respondent's request for a bond redetermination hearing is governed by section 242(a)(2). The usual custody provision at section 242(a)(1) specifically excepts application to aliens convicted of an aggravated felony.[4]

In standard bond proceedings under section 242(a)(1) of the Act, an alien, whom the Service in its discretion has arrested and taken into custody, generally should not be detained or required to post bond pending a determination of deportability except on a finding that he is a threat to the national security or is a poor bail risk. *Matter of Patel*, 15 I&N Dec. 666 (BIA 1976).

Section 242(a)(2)(A) of the Act states that the Attorney General "shall take into custody" any alien convicted of an aggravated felony and, subject to section 242(a)(2)(B), "shall not release" such felon from custody. Section 242(a)(2)(B) provides that the Attorney General "shall release" an alien taken into Service custody as an alien convicted of an aggravated felony if the alien is a lawful permanent resident and if the Attorney General determines that the alien "is not a threat to the community and that the alien is likely to appear before

---

[4] Section 242(a)(1) provides in part:

Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. *Except as provided in paragraph (2)*, any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (A) be continued in custody; or (B) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (C) be released on conditional parole. (Emphasis added.)

any scheduled hearings." Section 242(a)(2)(B) of the Act. We find that the statutory scheme and language of section 242(a)(2) creates a presumption against the release of any alien convicted of an aggravated felony from Service custody unless the alien demonstrates that he is an alien lawfully admitted for permanent residence, is not a threat to the community, and is likely to appear for any scheduled hearings. If the alien demonstrates these factors then the Attorney General "shall release" him from custody on bond or such other conditions. *See INS v. Cardoza-Fonseca*, 480 U.S 421, 431 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984) (the starting point in cases involving statutory construction must be the language employed by Congress, and it is assumed that the legislative purpose is expressed by the ordinary meaning of the words used). We find it unreasonable to conclude that the statute requires the Service to take into custody an alien convicted of an aggravated felony, and then requires the *Service* to attempt to demonstrate that the alien "is not" a threat to the community and "is likely" to appear for any scheduled hearings.

The presumption against the respondent, however, is not irrebuttable. The Service argues that the respondent has committed a "particularly serious crime" and, under the Board's decision in *Matter of Carballe, supra*, thereby constitutes "a danger to the community" within the meaning of section 243(h)(2)(B) of the Act. Section 515(a)(2) of the Immigration Act of 1990, 104 Stat. at 5053, amends section 243(h)(2), the withholding of deportation provision of the Immigration and Nationality Act, and reads as follows:

> Section 243(h)(2) (8 U.S.C. 1253(h)(2)) is amended by adding at the end the following:
>
> "For purposes of subparagraph (B), an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime.".

Pursuant to the amendment by section 515(a)(2), all aggravated felons shall be considered to have committed a "particularly serious crime." If one were to accept the Service's contention on appeal and equate this finding of "danger to the community" under section 243(h)(2) with a finding of "threat to the community" under section 242(a)(2)(B) of the Act, no alien convicted of an aggravated felony would be eligible for release from custody under section 242(a)(2)(B), thus rendering the provision meaningless. A statute should be construed under the assumption that Congress intended it to have purpose and meaningful effect. *Mountain States Tel. & Tel. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985); *Sutton v. United States*, 819 F.2d 1289, 1295 (5th Cir. 1987). In this case we find it necessary to note no more than that section 515(a)(2) of the Immigration Act of 1990 expressly limits its amendment, stating that it is "[f]or purposes of subparagraph

(B)," that is, for determining eligibility for withholding of deportation. *See INS v. Cardoza-Fonseca, supra; INS v. Phinpathya, supra* (statutory construction).

Therefore, we will remand this case to the immigration judge to allow the respondent to demonstrate that he "is not a threat to the community and that [he] is likely to appear before any scheduled hearings," within the meaning of section 242(a)(2)(B) of the Act, and for the entry of a new decision. At the hearing the immigration judge shall advise the respondent of the presumption against him under section 242(a)(2)(B), including an explanation that it is the respondent's obligation to rebut this presumption by showing that he is not a threat to the community and is likely to appear as required for future hearings. The immigration judge must explain in the decision the basis for the finding that the alien has or has not rebutted the presumption against the alien's release from Service custody.[5]

---

[5]The dissent focuses on certain provisions of the Bail Reform Act of 1984, 18 U.S.C. § 3141 (1988), yet does not at all discuss the significance of section 242(a)(2)(A) of the Immigration and Nationality Act. We initially note that we are interpreting the Immigration and Nationality Act, rather than the Bail Reform Act, and no arguments regarding the Bail Reform Act have been presented on appeal. Moreover, the Government's custody authority over aliens in civil deportation proceedings is fundamentally different from its detention authority over individuals pending federal criminal prosecutions. *See Carlson v. Landon*, 342 U.S. 524 (1951); *United States ex rel. Barbour v. District Director*, 491 F.2d 573 (5th Cir.), *cert. denied*, 419 U.S. 873 (1974). Section 242(a)(2) of the Immigration and Nationality Act obviously has an entirely different history from that underlying the Bail Reform Act. In fact, prior to its amendment in the Immigration Act of 1990, section 242(a)(2) mandated that all aliens convicted of aggravated felonies be taken into custody and it *entirely barred* their release under any circumstances. One simply cannot meaningfully interpret section 242(a)(2)(B) without any reference at all to section 242(a)(2)(A), which not only still directs the Attorney General to take aliens convicted of aggravated felonies into custody, but entirely precludes the release of many such aliens.

Further, even were one to look to the Bail Reform Act for guidance by analogy, the most analogous provision to section 242(a)(2) of the Immigration and Nationality Act is 18 U.S.C.A. § 3143 (West Supp. 1991) (which pertains to individuals who have been convicted and are pending sentencing or appeal), rather than 18 U.S.C.A. § 3142 (West Supp. 1991). The framework of 18 U.S.C.A. § 3143 (West Supp. 1991) closely parallels that of section 242(a)(2). Under 18 U.S.C.A. § 3143(a)(1) (West Supp. 1991), for example, a person who is found guilty of an offense and who is awaiting imposition or execution of sentence (other than one for whom the sentencing guidelines do not recommend a term of imprisonment) "shall ... be detained" unless the judicial officer finds by clear and convincing evidence that the person "is not likely to flee or pose a danger to the safety of any other person or the community if released." If such a finding is made, the judicial officer "shall" order the individual's release in accordance with other provisions of the Bail Reform Act. The courts have uniformly held that this section creates a presumption that a defendant who has been convicted of a crime may not be released and places the burden of proof on the defendant to show that he is not likely to flee or pose a danger if released. *United States v. Vance*, 851 F.2d 166, 168-170

**ORDER:** The record is remanded to the immigration judge for further proceedings consistent with the foregoing decision.

*DISSENTING OPINION:* Michael J. Heilman, Board Member

I respectfully dissent.

I fear that the majority decision says both too much and too little and so may cause substantial misdirection and confusion in the interpretation of section 242(a)(2)(B) of the Immigration and Nationality Act, 8 U.S.C.A. § 1252(a)(2)(B) (West Supp. 1991). Given the stakes for the individuals covered by this provision, extreme care in both interpreting and applying this provision is absolutely necessary.

As a preliminary matter, before I begin my analysis of the aggravated felony bond provision, several points should be made. First, I will consider whether that provision does in fact create a "rebuttable presumption" against release. Second, I will address whether, if a "rebuttable presumption" does exist, the burden of persuasion remains with the Immigration and Naturalization Service or shifts to the alien. Third, I will consider whether the aggravated felony bond provision creates one standard of proof for establishing that a person is a threat to the community and that she is a flight risk, or whether these are separate issues with different standards of proof.

I. Section 242(a)(2)(B) of the Act does not create a "rebuttable presumption."

The majority finds that section 242(a)(2)(B) of the Act

(6th Cir.), *cert. denied*, 488 U.S. 893 (1988); *United States v. Strong,* 775 F.2d 504, 505 (3d Cir. 1985); *United States v. Jacob,* 767 F.2d 505, 507 (8th Cir. 1985); *United States v. Jessup,* 757 F.2d 378, 382 (1st Cir. 1985); *United States v. Giancola,* 754 F.2d 898, 900-01 (11th Cir. 1985), *cert. denied,* 479 U.S. 1018 (1986); *United States v. Miller,* 753 F.2d 19, 21-23 (3d Cir. 1985). Even further requirements must be met by a defendant for release under 18 U.S.C.A. § 3143(a)(2) (West Supp. 1991), which pertains to individuals convicted of many of the types of crimes that also qualify as aggravated felonies. *See Government of Virgin Islands v. Clark,* 763 F. Supp. 1321 (D.V.I. 1991). As noted above, section 242(a)(2) provides that the Attorney General "shall take into custody" any alien convicted of an aggravated felony. If the alien is not a lawful permanent resident of the United States, there is no authority for his release. If the alien is a lawful permanent resident and the Attorney General determines that the alien "is not a threat to the community and . . . is likely to appear before any scheduled hearing," he "shall" be released from custody on bond or such other conditions as the Attorney General may prescribe. Thus, the caselaw interpreting the section of the Bail Reform Act with language most analogous to that in section 242(a)(2) of the Immigration and Nationality Act strongly supports, rather than undercuts, the conclusion that section 242(a)(2) creates a presumption against the release of an alien who has been convicted of an aggravated felony and imposes the burden of proof on the alien to demonstrate that he is not a threat to the community and is likely to appear before any scheduled hearing.

creates a presumption against the release of any alien convicted of an aggravated felony from Service custody unless the alien demonstrates that he is an alien lawfully admitted for permanent residence, is not a threat to the community, and is likely to appear for any scheduled hearings. If the alien demonstrates these factors then the Attorney General "shall release" him from custody on bond or such other conditions.

The majority goes on to state that it is "unreasonable to conclude that the statute requires the Service ... to demonstrate that the alien 'is not' a threat to the community and 'is likely' to appear for any scheduled hearings."

I am not at all certain that this is a correct statement of the law, or that if it is, it affords clear guidance. In my estimation, section 242(a)(2)(B) of the Act is similar enough to certain provisions of the Bail Reform Act of 1984, 18 U.S.C. § 3141 (1988), that we would be wise to consider the interpretation given to that body of law. In particular, I have in mind 18 U.S.C.A. § 3142(b) and (e) (West Supp. 1991). Under section 3142(e), by statute, a "rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if" a magistrate or judge finds that the person has been convicted of certain offenses under the Controlled Substances Act, as well as other statutes. The offenses listed in the Bail Reform Act of 1984 parallel to a limited degree the "aggravated felony" of section 242(a)(2)(B) of the Act, as defined in section 101(a)(43) of the Act, 8 U.S.C.A. § 1101(a)(43) (West Supp. 1991).

The aggravated felony bond provision also contains language similar to 18 U.S.C.A. § 3142(b) (West Supp. 1991). That section states that a "judicial officer shall order the pretrial release of the person on personal recognizance" or bond subject to certain conditions, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."

It is not clear, in the first instance, that the aggravated felony bond provision was intended to create a "rebuttable presumption," as the majority states. The majority's conclusion is based on statutory construction, in particular, the assumption that the "legislative purpose is expressed by the ordinary meaning of the words used." From this principle, the majority concludes that it is "unreasonable to conclude" that the statute requires the Service to "demonstrate that the alien 'is not' a threat to the community."

I wish I could share the majority's faith that the words of this provision have an "ordinary meaning," and that if they do, they create a rebuttable presumption. However, if reference is made to the language used in the Bail Reform Act of 1984, it is not altogether clear

353

that the "ordinary meaning" may be lifted from the bare words of the statute.

It is instructive to contrast the language of section 242(a)(2)(B) of the Act with section 3142(b) of the Bail Reform Act of 1984. Section 3142 of the Bail Reform Act of 1984 deals with release pending trial in federal criminal proceedings, the situation most analogous to release pending an immigration hearing. The former reads, as pertinent:

> The Attorney General shall release from custody an alien who is lawfully admitted for permanent residence on bond or such other conditions as the Attorney General may prescribe if the Attorney General determines that the alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

The latter reads:

> The judicial officer shall order the pretrial release of the person ... unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

The sentence structure and the grammar are very similar, with one difference being the use of the word "unless" introducing a conjunctive phrase in the Bail Reform Act of 1984, and the word "if" used in the immigration provision. It does not appear that the difference in affirmative and negative characterizations results in a different meaning. The judicial officer "determines that such release ... will endanger the safety." The Attorney General "determines that the alien is not a threat to the community."

If these two provisions are similar enough that they should have the same effect, then it becomes even more difficult to apply the majority's interpretation when prior judicial interpretations of the federal bail provision are consulted. The predecessor provision to section 3142(b) of the Bail Reform Act of 1984 was section 3146(a) of the Bail Reform Act of 1966, Pub. L. No. 89-465, 80 Stat. 214. The 1966 Act provided as follows:

> Any person charged with an offense, other than an offense punishable by death, shall ... be ordered released pending trial ... unless the officer determines ... that such a release will not reasonably assure the appearance of the person as required.

This provision was revised and renumbered as section 3142(b) in 1984, to include reference to danger to the community. For our purposes, however, the salient point is that the "statute and its legislative history are unambiguous" as stated in *United States v. Leathers*, 412 F.2d 169, 170 (D.C. Cir. 1969):

> The Bail Reform Act specifies mandatorily that conditions of pretrial release be set for defendants accused of noncapital offenses. When imposing these conditions, the sole concern of the judicial officer charged with this duty is in establishing the

354

minimal conditions which will "reasonably assure the appearance of the person for trial * * *." The structure of the Act and its legislative history make it clear that in noncapital cases pretrial detention cannot be premised upon an assessment of danger to the public should the accused be released.

The Act creates a *presumption in favor of releasability* on personal recognizance or upon the execution of an unsecured appearance bond.

*Id.* at 170-71 (emphasis added) (footnote omitted).

We therefore have at the outset similar language whose "ordinary meaning" was interpreted to mean in regard to the Bail Reform Act of 1966 that a presumption in favor of release was created. This is clearly the contrary of what the majority concludes, that this language "creates a presumption against the release" of the alien.

It does not appear that the favorable presumption of release was changed by the 1984 and 1988 amendments to the Bail Reform Act of 1966. This is so, even though the Bail Reform Act of 1984 marked a radical departure from former federal bail policy, by requiring the judicial officer to consider danger to the community in all cases in setting conditions of release. A defendant's dangerousness may serve as a basis for pretrial detention. If release on personal recognizance or unsecured appearance bond will not provide the necessary safeguards, then the magistrate or judge must impose the least restrictive bail conditions necessary to assure appearance and safety.

In certain narrowly drawn circumstances, a judicial officer is required to conduct a detention hearing. This will occur if the offense is a crime of violence, a crime punishable by life imprisonment or death, a federal narcotics offense with a potential sentence of 10 years or more, any felony following two convictions for the preceding types of offense, if there is a serious risk of flight, or if there is a serious risk that the defendant will attempt to obstruct justice or to threaten, injure, or intimidate a witness or juror.

The Bail Reform Act of 1984 thus appears to continue the previous presumption for release, unless after a hearing pursuant to section 3142(e) of that Act, the "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e) (West Supp. 1991). The determination that the person is a danger to the community must be supported by clear and convincing evidence. *Id.*

There are several possible conclusions that may be drawn from all of this. The aggravated felony bond provision found in section 242(a)(2)(B) of the Act seems to have been modeled upon the same language originally found in the Bail Reform Act of 1966, and continued, with an amendment relating to dangerousness, in the Bail Reform Act of 1984. This language has been held to create a presumption in favor of release. That this presumption was thought to

continue in the 1984 revision is evident from the fact that Congress created a specific "rebuttable presumption" against release in regard to certain specified offenses. But even there, a judicial officer is obliged to find by clear and convincing evidence that no combination of conditions will prevent danger to the community or a particular person. This is a severely restricted form of presumption.

If then, the aggravated felony bond provision reverses the presumption in favor of release that exists or existed in regard to similar language in the Federal Bail Reform Acts, then it can only be so if Congress created an immigration bond provision that in actuality adopted as the general rule for aliens the very specific and narrowly drawn exception to the rule for federal bail decisions. It does not seem likely that Congress intended to do this, or that if this was the congressional intention, it would have done so only by implication or obliquely. Initially, there is the problem that Congress did not specifically use statutory language, as it did in section 3142(e) of the Bail Reform Act of 1984, when it stated clearly that "a rebuttable presumption arises" that no conditions will assure the safety of the community or of any other person, if certain offenses are involved. This language was apparently employed to "minimize the possibility of a constitutional challenge," by providing a "narrowly-drafted statute with the pretrial detention provision addressed to the danger from 'a small but identifiable group of particularly dangerous defendants.'" *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986). Given the care with which Congress crafted the exceptional presumption in the Bail Reform Act of 1984, because of the clear constitutional problems it extensively considered at that time, I would have to assume that in drafting the aggravated felony bond provisions, Congress either experienced a case of amnesia or saw no constitutional problems because it did not consider the aggravated felony bond provision to create a rebuttable presumption.

In the absence of specific language creating a statutory "rebuttable presumption," and any legislative history to the aggravated bond provision evincing a clear congressional finding that all "aggravated felons" are presumptively not to be released, the basis for concluding that a rebuttable presumption against release may be found by implication is quite weak. As this is so, there is every reason to find that section 242(a)(2)(B) of the Act should be interpreted as applying the general American presumption in favor of release, pending trial, or as in the immigration context, pending a deportation hearing.

II. The burden of persuasion is on the Service if a "rebuttable presumption" against release exists.

Even if this interpretation of a presumption in favor of release is rejected, or in error, then at a minimum, we should be clear that even

where a "rebuttable presumption" against release exists, the burden of persuasion is always on the Government to justify detention.

In construing section 3142(e) of the Bail Reform Act of 1984, at least four federal circuit courts have found that an indictment is sufficient to demonstrate probable cause creating the "rebuttable presumption" under this section that the person would flee or would be a threat to the safety of the community. But in analyzing this presumption, these courts have not taken the same approach as I understand the majority to have taken here. The United States Court of Appeals for the First Circuit has had the following to say on the matter:

> [W]e must first decide what the rebuttable presumption means. What kind of burden is it designed to impose upon a defendant? Or, to cast the question in terms traditionally used in the law of evidence, does it impose a "burden of persuasion" or only a "burden of production"? If the former, the alleged drug offender would have to *prove* he would not flee—i.e., he would have to *persuade* the judicial officer on the point. If the latter, he would only have to introduce a certain amount of evidence contrary to the presumed fact; no change in the burden of persuasion is effected. Where the burden of persuasion lies may make a practical difference to a magistrate or judge genuinely uncertain on the basis of what the parties have presented.
>
> The United States Attorney here suggests that Congress meant the presumption to shift the burden of persuasion to the defendant. And he cites a district court case in support of this view. In two other cases, however, it has been held that Congress did not intend to shift the burden of persuasion to the defendant but intended to impose only a burden of production. We believe the latter interpretation is correct.

*United States v. Jessup*, 757 F.2d 378, 380-81 (1st Cir. 1985) (citations omitted). The Court of Appeals for the Seventh Circuit has adopted this interpretation, *United States v. Diaz*, 777 F.2d 1236 (7th Cir. 1985), as has the Fifth Circuit, *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985), and the Third Circuit, *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).

The First Circuit found that this interpretation was justified by reference to four factors. *United States v. Jessup, supra*. First, it was "chary of interpreting ambiguous language to mandate pretrial confinement where evidence before a magistrate is indeterminate." *Id.* at 381. Second, it found that the legislative history, "while arguably ambiguous," did not "suggest that Congress meant to impose a burden of persuasion on the defendant." *Id.* Third, a later section in the Bail Reform Act of 1984 did not "impose a burden of persuasion even upon a defendant found likely to have just committed a crime while on bail." *Id.* at 382. Fourth, "an examination of a related section of the Act, § 3143, shows that Congress knew how to create a 'burden of persuasion' when it wanted to do so." *Id.*

The First Circuit also responded to the Government's arguments that

357

(a) Congress did not intend to create a set of presumptions with little or no practical effect; and

(b) a 'burden of production' presumption would have little practical effect

by responding that it agreed with the first argument, that there was to be a practical effect. *Id.* And this was to be exactly that effect alluded to in the legislative history, the commission of a serious crime while on release would "'constitute[] *compelling evidence* that the defendant poses a danger to the community.'" *Id.*

The court did not agree with the second Government assertion. In my estimation, this is a highly significant point, because the majority here takes pains to emphasize that it is "unreasonable to conclude that the statute requires ... the *Service* to attempt to demonstrate that the alien 'is not' a threat to the community." It is here that I part ways with the majority, because to the extent the Bail Reform Act of 1984 and the "aggravated felony" bond provision are similar in purpose and language, the "rebuttable presumption," if one exists in the latter, has the same effect: "[I]t has created a 'burden of production' presumption that *does* have a significant practical impact." *United States v. Jessup, supra,* at 383. In the court's view, this interpretation

suggests a relatively obvious way to apply this presumption ... giving it some weight, without shifting the burden of persuasion. Congress investigated a general problem, the problem of drug offenders and flight. After hearing evidence, Congress concluded that "flight to avoid prosecution is particularly high among persons charged with major drug offenses." ... Congress then wrote its drug offender/flight presumption. These facts suggest that Congress intended magistrates and judges, who typically focus only upon the particular cases before them, to take account of the more general facts that Congress found. In order to "rebut" the presumption, the defendant must produce some evidence; and the magistrate or judge should then still keep in mind the fact that Congress has found that offenders, as a general rule, pose *special* risks of flight. The magistrate or judge should incorporate that fact and finding among the other special factors that Congress has told him to weigh when making his bail decision....

. . . .

Since the presumption is but one factor among many, its continued consideration by the magistrate does not impose a burden of persuasion upon the defendant. And, since Congress seeks only consideration of the general drug offender/flight problem, the magistrate or judge may still conclude that what is true in general is not true in the particular case before him. He is free to do so, and to release the defendant, as long as the defendant has presented some evidence and the magistrate or judge has evaluated all of the evidence with Congress's view of the general problem in mind. It is worth noting that the Act requires that all detention orders "include written findings of fact and *a written statement of the reasons for the detention.*" Thus, the defendant is protected from a weighing of factors that is arbitrary, or not in keeping with the Act.

*Id.* at 383-84 (citations omitted).

Although I have quoted at some length from the First Circuit

decision, which on its face deals only with a criminal detention provision, its applicability is so clear, and its reasoning so persuasive, that paraphrase hardly seems purposeful.

If there is an important difference between the Bail Reform Act of 1984 and the "aggravated felony" bond provision, it is that the Bail Reform Act of 1984 has the virtue of detail, specific language, and a basic regard for the rights of a person who may be deprived of liberty. The Bail Reform Act of 1984 clearly treats the authority to detain without bond a momentous, if not dangerous, power, which should be severely circumscribed. In contrast, the "aggravated felony" bond provision is almost embarrassing in its indifference to the most elementary considerations which have been traditionally associated with detention in American law. It does not seem enough to state that this is the "immigration law" and that these are "civil proceedings," when their effect is equally as draconian as the criminal law. It hardly matters that in one case the key to the cell is turned by an employee of the Bureau of Prisons and in the other by an employee of the Immigration and Naturalization Service. One could, in fact, easily imagine a situation where the same permanent resident alien would be released under the Bail Reform Act of 1984 and jailed under the immigration law.

A second important difference between the Bail Reform Act of 1984 and the "aggravated felony" bond provision is the sweep of the term "aggravated felony." It is a term that manages to mislead, to alarm, to distort, and to dehumanize. An "aggravated felon" may well be an addict mother with two children, convicted under state law, who has been sentenced to probation and drug treatment, who has never spent a day in prison. The "aggravated felon" is commonly a person treated as a petty criminal in the federal and state criminal justice systems.

In my estimation, because the stakes are so high, there should be strict guidelines for the conduct of these "aggravated felony" bond hearings. In this regard, the provisions of the Bail Reform Act of 1984 offer useful instruction. Immigration bond hearings before an immigration judge generally comport with the procedural safeguards required by the Bail Reform Act of 1984, although it is obvious that the initial bond or detention determination by the district director meets none of these standards. *See* 8 C.F.R. § 242.2(c)(2) (1991). For the sake of clarity, then, it should be noted that what we are actually dealing with in this decision is a bond redetermination by the immigration judge upon request by the person "detained" by order of the district director. Unlike the criminal justice system, the initial decision to jail a person is made by the very law enforcement agency which ordered the arrest. There is no impartial magistrate or judge involved at that stage. The hearing before the immigration judge offers

the first opportunity for an alien to appear before an impartial trier of fact.

III. The burden of proof is "clear and convincing" evidence to establish "threat to the community" and "clear preponderance" to establish risk of flight.

Besides making clear that the burden of persuasion always rests with the Service, we should state openly what the burden of proof is in these cases. In my view, given the similarity between the aggravated felony bond provision and section 3142 of the Bail Reform Act of 1984, the immigration judge must find "clear and convincing" evidence that the individual is not a "threat to the community." The burden of proof to establish that the alien is not "likely to appear" under section 242(a)(2)(B) of the Act should be a "clear preponderance of the evidence." *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985). I understand that in choosing these standards there is a certain arbitrariness, but at the same time, the virtue of these standards is that they allow us to draw upon an established body of law, and judicial interpretation, rather than striking out into the unknown. I am also aware that although the "clear and convincing" standard of proof is well established, there has been some dispute as to whether the standard of proof to establish risk of flight should also be "clear and convincing" evidence. Certainly, symmetry would seem to favor the same standard for both "threat" and the "flight risk."

The argument against identical standards is basically one founded in prior practice. In saying this, however, the only prior practice that is of any guidance is that found in federal judicial interpretations of bail provisions, because this Board has never stated what the burden of proof is in determining whether a person is a flight risk. This Board has, however, considered the same factors as have been considered in federal bail determinations, and so it seems logical to apply the same standard of proof. *See, e.g., Matter of Andrade*, 19 I&N Dec. 488 (BIA 1987); *Matter of Patel*, 15 I&N Dec. 666 (BIA 1976); *Matter of San Martin*, 15 I&N Dec. 167 (BIA 1974). In *Matter of San Martin, supra,* this Board simply stated: "With reference to the Bail Reform Act, it provides that various factors should be taken into account, which were taken into account in this case, and of which we shall take account." *Id.* at 168 (footnote omitted).

If then, this Board applies the same factors in bond determinations as are considered under the federal Bail Reform Act of 1984, then it makes sense to apply the same standards of proof, in the absence of any standard of proof in the aggravated felony bond provision. In construing section 3142 of the Bail Reform Act of 1984, the Ninth Circuit stated:

Finally, because the standard of proof usually applicable to pretrial proceedings is the preponderance of the evidence, we conclude that the congressional silence with regard to the applicable standard of proof in demonstrating risk of flight is the preponderance of the evidence.

Such differential treatment comports with the congressional recognition of danger to another or to the community as a discrete, independent basis for the denial of pretrial release. Since bail was determined under the former law by the likelihood of defendant's appearance at trial, and without explicit recognition of the need to protect the community. it is reasonable to subject the Government to a higher standard of proof when the second purpose is added as an explicit statutory category. Further, a finding of danger to the community is likely to involve more specific and quantifiable evidence than is a finding of risk of flight. For instance, prior convictions, police reports, and other investigatory documents are, as a matter of course, used to show past histories of violence. From these objective sources, trial judges may infer a present danger to the community. Such data is not often available regarding risk of flight. Thus, it is wholly feasible for the Government to satisfy the higher burden in showing danger to the community.

*United States v. Motamedi, supra*, at 1407 (citations omitted).

In my estimation, these cogent considerations offer a sound basis for applying the same standards of proof to section 242(a)(2)(B) of the Act. In this instance, because the immigration judge did not apply the provisions of this section in setting bond, I would remand the record to the immigration judge to determine whether the respondent is a threat to the community or a flight risk under the standards outlined above.