# In re N-J-B-, Respondent

*Decided by Attorney General August 20, 1999*

*Decided by Attorney General July 10, 1997*

*Decided by Board February 20, 1997*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Ernesto Varas, Esquire, Miami, Florida, for respondent

Robert B. Jobe, Esquire, San Francisco, California, amicus curiae[2]

Sharon Dulberg, Esquire, San Francisco, California, amicus curiae[2]

William C. Cox, Appellate Counsel, for the Immigration and Naturalization Service

BEFORE THE ATTORNEY GENERAL
(August 20, 1999)

(1)  The Attorney General remands the case to the Board for a determination of the respondent's eligibility for adjustment of status under section 202 of the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, tit.II, 111 Stat. 2193, 2193 (1997).

By Attorney General Order No. 2093-97 (July 10, 1997), I directed the Board of Immigration Appeals ("BIA"), pursuant to 8 C.F.R. 3.1(h)(1)(i) (1999), to refer this case to me for review, and the case is currently pending before me.  It has come to my attention that the respondent has filed a motion with the BIA to remand the case to the Immigration Court for con-

---

[1]The Board's February 20, 1997, decision and the Attorney General's July 10, 1997, decision in this case were originally published as *Matter of N-J-B-,* 21 I&N Dec. 812 (BIA, A.G. 1997).  For purposes of clarity and convenience, those decisions are reprinted here and should be cited as Interim Decision 3415.

[2]This Board acknowledges with appreciation the thoughtful arguments raised in amici curiae's brief.

sideration of her eligibility for adjustment of status under section 202 of the Nicaraguan Adjustment and Central American Relief Act of 1997, Pub. L. No. 105-100, 111 Stat. 2193 ("NACARA"). I am remanding the case to the BIA to determine whether the respondent is clearly ineligible for relief under NACARA. If the BIA determines that the respondent is not clearly ineligible for such relief, I direct it to remand the case to the Immigration Court pursuant to 8 C.F.R. 245.13(d)(2) (1999) for adjudication of her application of adjustment of status under section 202 of NACARA.

## BEFORE THE ATTORNEY GENERAL
### (July 10, 1997)

(1) The Attorney General vacates the decision of the Board of Immigration Appeals pending her further determination.

Pursuant to 8 C.F.R. 3.1(h)(1)(i)(1997), I direct the Board of Immigration Appeals (BIA) to refer to me for review its decision in *Matter of N-J-B-* (A28 626 831) (Feb. 20, 1997), and I vacate the opinion of the BIA pending my further determination.

## BEFORE THE BOARD
### (February 20, 1997)

(1) The general effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), is April 1, 1997. Section 309(c)(5) of the IIRIRA, 110 Stat. at 3009-627, creates an exception to the general effective date with regard to suspension of deportation for aliens with pending deportation proceedings and establishes a transition rule to be applied in these pending cases.

(2) Under the provisions of the IIRIRA transition rule, service of the Order to Show Cause ends the period of continuous physical presence prior to the acquisition of the requisite 7 years.

(3) The respondent was served with an Order to Show Cause before the IIRIRA's enactment and deportation proceedings are still pending. Inasmuch as the Order to Show Cause was served prior to the respondent's acquisition of the 7 years' continuous physical presence, she is ineligible for suspension of deportation under the transition rule.

Before: Board En Banc: DUNNE, Vice Chairman; HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, and MATHON, Board Members. Dissenting Opinions: GUENDELS-BERGER, Board Member, joined by SCHMIDT, Chairman; VILLAGELIU, Board Member; ROSENBERG, Board Member; VACCA, Board Member.

HEILMAN, Board Member:

The respondent has timely appealed from that portion of the Immigration Judge's decision denying her applications for asylum, withholding of deportation, and suspension of deportation. The appeal will be dismissed.

## I. CONTINUOUS PHYSICAL PRESENCE AND THE ILLEGAL IMMIGRATION REFORM AND IMMIGRANT RESPONSIBILITY ACT OF 1996

With respect to the respondent's claim for suspension of deportation, the record reflects that the respondent arrived in the United States on August 5, 1987, and that the Order to Show Cause and Notice of Hearing (Form I-221) was served on August 27, 1993, less than 7 years later. The Immigration Judge's denial of suspension of deportation was based solely on the respondent's failure to prove the requisite extreme hardship to herself. Subsequently, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), was enacted on September 30, 1996. In light of this legislation, we must decide whether the respondent still has the 7 years of continuous physical presence necessary to be eligible for suspension of deportation. In other words, we must determine whether, and if so to what extent, the requirements of the transitional rule for aliens in proceedings, which is set forth in the IIRIRA, apply to the pending appeal of the denial of this respondent's application for suspension of deportation.

By enacting the IIRIRA, Congress replaced the former suspension of deportation relief with the new cancellation of removal. With these amendments, Congress clearly intended to limit the categories of undocumented aliens eligible for such relief and to limit the circumstances under which any relief may be granted. The general effective date for implementing the IIRIRA amendments established under section 309(a) of the IIRIRA, 110 Stat. at 3009-625, is April 1, 1997. Aliens placed in removal proceedings on or after this date face generally higher standards to qualify for cancellation of removal: a longer physical presence requirement; a more stringent standard of hardship; and omission of consideration of hardship to the aliens themselves. *See* Section 240A(b) of the Act (to be codified at 8 U.S.C. 1229b(b)). Section 240A(d) also provides special rules regarding termination and interruption of continuous physical presence, with the result that aliens seeking this relief will face more stringent continuous physical presence requirements.[3]

---

[3]Section 240A(d) of the Act provides in pertinent part as follows:
SPECIAL RULES RELATING TO CONTINUOUS RESIDENCE OR PHYSICAL PRESENCE.—

## II.  THE GENERAL EFFECTIVE DATE UNDER SECTION 309(a) AND THE TRANSITION RULE UNDER SECTION 309(c)

While establishing a general rule for the  effective date of the  IIRIRA, the language utilized in section 309(a) of the IIRIRA indicates that exceptions to the general effective date provision exist in this section and elsewhere.  More specifically, the general rule for effective date provisions established in section 309(a) is as follows:

> *Except as otherwise provided in this section* and sections 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5) of this division, this subtitle and the amendments made by this subtitle shall take effect on [April 1, 1997] (in this title referred to as the "title III-A effective date").  (Emphasis added.)

Thus, section 309(a) of the IIRIRA refers to the existence in section 309 of exceptions to the general effective date of April 1, 1997.  Similarly, section 309(c)(1) of the IIRIRA, 110 Stat. at 3009-625, also refers to the existence of exceptions to its general rule that the title III-A amendments do not apply to aliens already in exclusion or deportation proceedings before April 1, 1997.  Moreover, as will be further discussed below, these exceptions to the section 309(a)(1) general rule are not limited to transition rules having effect on April 1, 1997,[4] but also include transition rules having an *earlier* effective date.

Section 309(c)(1) is the general rule that the title III-A amendments do

---

(1)  TERMINATION OF CONTINUOUS PERIOD. — For purposes of this section, any period of . . . continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 239(a) or when the alien has committed an offense referred to in section 212(a)(2) that renders the alien inadmissible to the United States under section 212(a)(2) or removable from the United States under section 237(a)(2) or 237(a)(4), whichever is earliest.

(2) TREATMENT OF CERTAIN BREAKS IN PRESENCE. — An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

[4]As originally enacted, section 309(c)(1) of the IIRIRA provided:

TRANSITION FOR ALIENS IN PROCEEDINGS.—

(1) GENERAL RULE THAT NEW RULES DO NOT APPLY.—Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings as of the title III-A effective date—
  (A) the amendments made by this subtitle shall not apply, and
  (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

not apply to aliens already in proceedings. As originally enacted (i.e., with the "in proceedings as of the title III-A effective date" language), it was clear that this rule was the general rule to apply beginning April 1, 1997, because one would not know whether an alien was in proceedings "as of" that date until April 1, 1997, arrived. This reading of section 309(c)(1) was made somewhat less clear when a technical amendment revised the "as of" language to "before" [5]— because one can determine whether an alien is in proceedings "before" April 1, 1997, without waiting until that date. Obviously all of the cases presently before the Immigration Judges and this Board fall into this category. However, reading section 309(c) in its entirety, we conclude that the section 309(c)(1) *general* rule is still directed to aliens in proceedings on April 1, 1997.

Although there may be other reasons to reach this conclusion, the most persuasive arises from the language of section 309(c)(3) of the IIRIRA, 110 Stat. at 3009-626. That paragraph allows the Attorney General, *"[i]n the case* described in paragraph (1)," to reinitiate certain proceedings under the IIRIRA. The Attorney General could not do this (reinitiate these cases) *until* the effective date of the IIRIRA. Given this fact and the nature of the reference in paragraph (3) to paragraph (1), we are satisfied that the *general* rule in paragraph (1) still focuses on the transition to take place on April 1, 1997. This reading of the general rule is supported by the Joint Explanatory Statement of the Committee of Conference, which states: "Subsection (c) [of section 309] provides for the transition to new procedures in the case of an alien already in exclusion or deportation proceedings *on the effective date.*" H.R. Rep. No. 104-828, § 309 ("Joint Explanatory Statement").

Reaching this conclusion regarding the scope of section 309(c)(1), however, does not in itself resolve the question before us because subsection (c)(1) provides that its general rule is "[s]ubject to the succeeding paragraphs of this subsection." And, the succeeding paragraphs include not only rules that come into effect on April 1, 1997, but other transition rules that came into effect before that date. For example, it is inarguable that section 309(c)(4) of the IIRIRA, 110 Stat. at 3009-626, is clearly a transition provision that comes into effect prior to April 1, 1997. Thus, one cannot simply point to the fact that the section 309(c)(1) general rule pertains to what happens on the title III-A effective date because the provision is *subject to exceptions,* some of which are intended "to accelerate the implementation of certain of the reforms in title III." *See* 142 Cong. Rec. H12,293-01 (daily ed. Oct. 4, 1996) (comments of Rep. Smith).

Accordingly, the question before us is whether the exception created in

---

[5]Congress passed a technical correction amending section 309(c)(1) of the IIRIRA on October 11, 1996. Extension of Stay in the United States for Nurses Act, Pub. L. No. 104-302, 110 Stat. 3656 (1996).

section 309(c)(5) of the IIRIRA, 110 Stat. at 3009-627, is a transition rule only having effect on April 1, 1997 (as is the case, for example, with sections 309(c)(2) and (3)), or whether section 309(c)(5) is a transition rule with an earlier effective date (as is the case, for example, with section 309(c)(4)) and is intended to accelerate the implementation of a title III reform.

Section 309(c)(5) provides:

> TRANSITIONAL RULE WITH REGARD TO SUSPENSION OF DEPORTA-TION. — Paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to notices to appear issued before, on, or after the date of the enactment of this Act.

We find that the natural reading of the language of section 309(c)(5) of the IIRIRA is that it is a provision akin to section 309(c)(4), a transition rule intended to accelerate a title III reform. Section 309(c)(5) creates an exception to the general effective date with regard to suspension of deportation for aliens with pending deportation proceedings and establishes a transition rule to be applied to such pending cases. Section 309(c)(5), which is specifically captioned as the "Transition Rule With Regard to Suspension of Deportation," incorporates paragraphs (1) and (2) of section 240A(d) of the Act relating to continuous residence or physical presence and provides that these paragraphs "shall apply to notices to appear issued before, on, or after the date of the enactment" of the IIRIRA. In our view, particularly given the additional limitation on suspension of deportation enacted in section 309(c)(7) of the IIRIRA, 110 Stat. at 3009-627,[6] it would take a somewhat strained reading of this language to conclude that it was not intended to have immediate effect.

We do not disagree with any interpretation of the IIRIRA insofar as it recognizes the general effective date found in section 309(a) of the IIRIRA for these amendments as of April 1, 1997. *See Astrero v. INS,* 104 F.3d 264 (9th Cir. 1996).[7] Nevertheless, in specifically mandating that the new rules

---

[6]Section 309(c)(7) of the IIRIRA states:

> LIMITATION ON SUSPENSION OF DEPORTATION.—The Attorney General may not suspend the deportation and adjust the status under section 244 of the Immigration and Nationality Act of more than 4,000 aliens in any fiscal year (beginning after the date of the enactment of this Act). The previous sentence shall apply regardless of when an alien applied for such suspension and adjustment.

[7]We observe that in *Astrero*, the United States Court of Appeals for the Ninth Circuit did not deal with the language of section 309(c)(1) as amended by the technical amendment. In addition, the court's discussion reads as though section 309(c) of the IIRIRA only creates transition rules to come into effect on the general effective date of April 1, 1997, and does not acknowledge in its opinion that the exceptions to section 309(c) include transition rules that have an earlier effective date.

in sections 240A(d)(1) and (2) of the Act apply to "notices to appear issued before, on, or after the date of *enactment*," section 309(c)(5) carves out an exception to the general effective date. [Emphasis added.] It further requires application of the new rules regarding termination and interruption of continuous physical presence of sections 240A(d)(1) and (2) (which are not otherwise generally effective) to aliens with pending deportation proceedings from the September 30, 1996, enactment date.

In the instant case, the respondent was served with an Order to Show Cause initiating deportation proceedings on August 27, 1993, before the IIRIRA's enactment on September 30, 1996, and deportation proceedings are still pending. Thus, we must consider the effect, if any, on her suspension application of sections 240A(d)(1) and (2), as triggered by section 309(c)(5) of the IIRIRA. In this case, we find that there is no issue arising as to interruption of continuous physical presence in the United States. However, the provision of section 240A(d)(1) of the Act, which required termination of continuous physical presence with the service of a notice to appear, is not so readily resolved.

### III.  INTERPRETATION OF "NOTICE TO APPEAR" IN SECTION 309(c)(5) OF THE IIRIRA

We do not find the general effective date of section 240A of the Act, which is established in section 309(a) of the IIRIRA, dispositive of the issue before us. Because the provisions of section 240A(d)(1) and (2) are incorporated into section 309(c)(5) of the IIRIRA, it is the effective date of section 309(c)(5), a transition rule of the IIRIRA, which we consider determinative. Moreover, we note that section 309(c)(5) is not simply a rule accelerating the effective date of paragraphs (1) and (2) of section 240A(d) of the Act; rather, it is a substantive transition rule with regard to suspension of deportation that applies the "special rules" enacted in sections 240A(d)(1) and (2) to notices to appear issued before, on, or after the date of enactment of the IIRIRA.

Section 240A(d)(1) of the Act provides, in pertinent part, that any period of continuous residence or physical presence in the United States will be "deemed to end when the alien is served a notice to appear under section 239(a)." Section 240A(d)(1) of the Act. Section 309(c)(5) of the IIRIRA applies this provision to "notices to appear" issued on, before, or after the date of enactment. We must thus determine whether the IIRIRA term, "notice to appear," utilized in section 309(c)(5), refers to a specific document or is a more general term applicable to other documents which "initiate" proceedings. For an alien to be currently in deportation proceedings and thus trigger application of this transitional rule, the alien necessarily must have been served with an Order to Show Cause, constituting written

notice of such proceedings. *See* section 242B of the Act, 8 U.S.C. § 1252b (1994). Up to the present time, all respondents (this respondent included) have been served with a document informally described as an "Order to Show Cause," but formally titled an "Order to Show Cause and Notice of Hearing" (Form I-221). This multi-page document orders a respondent to "appear for a hearing before an Immigration Judge" to answer allegations and charges of deportability.

At the time deportation proceedings were initiated against this respondent, there was no specific document known as a "Notice to Appear." This term was first used in section 304 of the IIRIRA, 110 Stat. at 3009-587, (creating the new section 239(a)(1) of the Act, to be codified at 8 U.S.C. § 1229(a)(1)), which provides that initiation of proceedings for removal of an alien on or after April 1, 1997, begins with service of "written notice (in this section referred to as a 'notice to appear')" and specifies the information to be included in such notice.

We find upon consideration of the statutory language and legislative history that an "Order to Show Cause and Notice of Hearing" and a "notice to appear" are synonymous terms as used in section 309(c)(5). We thus consider that service of an Order to Show Cause operates to terminate an alien's period of continuous physical presence. We find in this case that such service occurred prior to the respondent's acquisition of 7 years' continuous physical presence in the United States. She is therefore unable to satisfy the physical presence requirement for eligibility for suspension of deportation. Consequently, we need not consider whether she has met the other statutory eligibility requirements for suspension of deportation or whether such relief would be warranted in the exercise of discretion.

In reaching this conclusion, we have taken a number of factors into account. We note initially that if we found the term "notice to appear" to encompass only documents identified specifically using that exact term, it would relate to removal proceedings initiated after the date of enactment of the IIRIRA or to proceedings converted under section 309(c)(2) of the IIRIRA, 110 Stat. at 3009-626. Such an interpretation would render superfluous the language of section 309(c)(5) establishing implementation of changes pertaining to physical presence for those in deportation proceedings during the transitional period between the September 30, 1996, enactment date and the April 1, 1997, general effective date. This conclusion necessarily follows from the fact that no "notice to appear" could have existed to be issued "before" or "on" the date of enactment of the IIRIRA. Moreover, an alien made subject to the new IIRIRA procedures under the provisions of sections 309(c)(2) or (3) would no longer have an application for suspension of deportation pending, which is the subject of the section 309(c)(5) transitional rule. It is a basic rule of statutory construction that no provision of law should be construed as rendering a word or clause surplusage. *See Kungys v. United States*, 485 U.S. 759 (1988); *Colautti v. Franklin*, 439 U.S. 379

(1979); *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303 (1961).

We also note that the Joint Explanatory Statement of the Committee of Conference, accompanying the Conference Report on H.R. 2202, makes clear that the rules under new sections 240A(d)(1) and (2) were intended to "apply to any notice to appear *(including an Order to Show Cause under current section 242A)* issued after the date of enactment." See Joint Explanatory Statement, *supra*, 309 (emphasis added). [8]

It also follows that in order for the section 309(c)(5) exception to the transitional rule in question to have any independent meaning at all, it must apply to aliens served with an Order to Show Cause prior to the date of enactment and not otherwise converted under subsections (c)(2) or (c)(3). A statute should be construed under the assumption that Congress intended it to have purpose and meaningful effect. *Mountain States Tel. & Tel. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985); *Sutton v. United States*, 819 F.2d 1289, 1295 (5th Cir. 1987). In this case, we find it sufficient to note that section 309(c)(5) of the IIRIRA expressly pertains to suspension of deportation for aliens in proceedings during the transitional period between the date of enactment and the general effective date of April 1, 1997. This section provides that the restrictions on physical presence be implemented prior to other restrictions. *See Matter of De La Cruz*, 20 I&N Dec. 346, 350 (BIA 1991). We find the language of section 309(c)(5) of the IIRIRA, reflecting application to notices to appear "before, on, or after the enactment" of IIRIRA, to constitute a directive or express command from Congress that it intended this provision to apply to pending cases initiated prior to the date of enactment. *See Landgraf v. USI Film Products, Inc.,* 511 U.S. 244 (1994). In addition, we emphasize that fundamental principles of statutory construction mandate our reliance on the plain meaning of the statute. We are required in our analysis to ensure a consistent and harmonious interpretation of the particular section and the statute as a whole.

We can discern no substantive difference in the contents of the Order to Show Cause and its successor document, the Notice to Appear, that would militate in favor of a contrary interpretation. Moreover, we are not persuaded that principles of statutory construction require us to conclude that the reference to a "notice to appear *under section 239(a)*" in section 240A(d)(1) of the Act (emphasis added) should be read to restrict or qualify the description of the term "notice to appear" in section 309(c)(5). Instead, we consider that the cited reference to section 239(a) does no more

---

[8]The "issued after the date of enactment" language in the Joint Explanatory Statement conflicts with the ultimately enacted language of section 309(c)(5). This was the language of the engrossed House bill that was before the Conference Committee that was revised, apparently at the 11th hour, to include the "before, on, or" phrase, which greatly expanded the scope of section 309(c)(5).

than identify the section of the Act in which the "notice to appear" was initially described. This language in section 240A(d) would restrict its application to proceedings initiated with a notice to appear under section 239(a) if the substantive section 309(c)(5) transitional rule had not been enacted. But, the transitional rule, regarding suspension of deportation gives this section 240A(d)(1) "special rule" broader application.

## IV. LEGISLATIVE HISTORY

In view of the extent to which the dissent has focused on certain aspects of legislative history to buttress its arguments regarding the effect of section 309(c)(5) of the IIRIRA, we include a few additional observations about the legislation and congressional intent. In making these observations, we do not suggest that we find reliance on the legislative history necessary due to the presence of statutory ambiguity. Rather, we merely wish to illustrate that our interpretation of the plain meaning of the legislation is supported by the legislative history. Similarly, given that our construction of the legislation is based upon the natural reading or plain meaning of the statute, we decline to comment on every aspect of the dissent's reading of the specific legislative history it cites. However, in so doing, we do not intend to suggest that we accept the dissent's characterization or reading of the legislative history cited.

We do observe, however, that the IIRIRA resulted from the reconciliation by the Conference Committee of differing House and Senate bills on immigration reform. Both engrossed bills before the Conference Committee contained restrictions on accruing residence or presence in the United States for suspension of deportation purposes. In our view, the restrictions in both bills would have resulted in immediately effective reforms. The relevant amendments in the Senate bill would have taken effect "on the date of enactment" and would have applied "to all aliens upon whom an order to show cause is served on or after the date of enactment of the Act." See 142 Cong. Rec. S4196-03, 150(d) (daily ed. Apr. 25, 1996). The relevant provision in the House bill would have applied the restrictions "to notices to appear issued after the date of enactment of the Act." 142 Cong. Rec. H2378-05, § 309(c)(5) (daily ed. Mar. 19, 1996). And, the Conference Report made clear this provision would apply to "*any* notice to appear (including an Order to Show Cause under current section 242A) issued after the date of enactment of this Act." H.R. Rep. No. 104-469(I), § 309 (1996), *available in* (emphasis added); *see also* Joint Explanatory Statement, *supra*, § 309. While the scope of this reform was vastly expanded by the last minute inclusion of the "before, on, or" language into section 309(c)(5) of the House bill (to which the Senate receded), we do not see how the addition of this *more* restrictive language could be viewed as

intending to transform the character of section 309(c)(5) into a transitional rule that was not intended to have immediate effect.

Moreover, we point out that the immigration reforms in question were motivated by a desire to remove the incentive for aliens to prolong their cases by ending the accrual of time in residence for suspension of deportation when deportation proceedings were commenced. The legislative history reflects that Congress was displeased with the ability of aliens to protract the deportation hearing process and thereby accrue time that could be counted toward satisfaction of the continuous physical presence requirement. *See* H.R. Rep. No. 104-469(I) (1996), *available* in 1996 WL 168955, at 390 (noting that "[s]uspension of deportation is often abused by aliens seeking to delay proceedings until 7 years have accrued[,] . . . even after they have been placed in deportation proceedings"). This dissatisfaction evidently led Congress to direct that the accrual of qualifying time would stop with the issuance of the notice to appear. *See* H.R. Rep. No. 104-879 (1997) (noting that reforms in the IIRIRA's title III included ending the "accrual of time-in-residence on the date an alien is placed into removal proceedings, thus removing the incentive for aliens to prolong their cases in the hope of remaining in the United States. long enough to be eligible for relief").

Viewing these two factors in combination reinforces our reading of the statutory language. The 6-month general delayed effective date for the IIRIRA is a significant period during which time can accrue toward eligibility as to some aliens in proceedings on the date of enactment or placed in proceedings shortly thereafter. And, in view of our determination that an Order to Show Cause amounts to a notice to appear, regardless of when it was issued, it is not apparent why Congress would want some aliens to continue to accrue time for eligibility purposes (and others to remain eligible) during a 6-month delayed effective date period, when Congress had already taken the significant step of directing that these particular new rules would apply to old cases. In other words, Congress could not know which aliens might come up for final adjudications during the 6- month delayed effective date. Due to its displeasure with the old rules respecting accrual of time, Congress decided to apply the new rules to previously initiated cases, eliminating the ability of aliens to qualify for relief. Congress evidently saw this particular problem of time accrual to be significant enough to warrant an exception to its general rule that the new law would not apply to cases initiated under the old law. Given the intent of Congress to correct the problem to this degree, it makes little sense to construe the legislation in a way that would nevertheless perpetuate the very problem Congress sought to correct, even if only for the 6-month delayed effective date period and even if only for the random subset of aliens fortunate enough to obtain some final merits ruling during that period.

In summary, we have examined the legislative history overall and find

that on balance our reading of the statutory language of section 309(c)(5) is consistent with the generally restrictive legislative intent — an intent to terminate immediately the accrual of time-in-residence for suspension eligibility by encompassing aliens in proceedings before the date of the IIRIRA's enactment. We therefore find that under the provisions of section 240A(d)(1) of the Immigration and Nationality Act added by the enactment of the IIRIRA, as applied in the section 309(c)(5) transitional rule, the Order to Show Cause must be deemed to end the period of continuous physical presence on August 27, 1993, the date it was served, prior to this respondent's acquisition of the requisite 7 years. Thus, the respondent in the instant case is unable to satisfy the statutory physical presence requirement now in effect. Because we find the lack of requisite physical presence dispositive in terms of eligibility for suspension, we need not consider whether she has met the other requirements for suspension of deportation eligibility.

## V. ASYLUM AND WITHHOLDING OF DEPORTATION

We find no merit in the respondent's assertion on appeal that the Immigration Judge erred in denying her applications for asylum and withholding of deportation because she was persecuted when she, as a teacher in Nicaragua, refused to be forced to indoctrinate students with Marxist ideology. The Immigration Judge's denial of the respondent's persecution claim is well supported by the record. The respondent testified that she worked as a teacher in Nicaragua for 20 years; that the educational system changed completely such that if "one did not participate" with the army one would have a "great problem" which she did not further describe; that she voluntarily resigned from her job because of "pressures"; that she was never detained or threatened by the Sandinistas; and that she feels her "life would end" if she returned to Nicaragua because she has no money or family there. She reported only that before the Sandinistas came to power she was threatened by a "group of young people" in the street. She made no mention in her testimony of being a member of any organization or group, nor did she refer to having been arrested, interrogated, convicted or sentenced, or imprisoned in her home country. The respondent has not met her burden of proving that she has a well-founded fear of persecution in Nicaragua and a fortiori she has failed to satisfy the higher standard for withholding of deportation based on one of the five statutory grounds of race, religion, nationality, membership in a particular social group, or political opinion. *See* sections 101(a)(42)(A), 208(a), 243(h) of the Act, 8 U.S.C. §§ 1101(a)(42)(A), 1158(a), 1253(h) (1994); INS v. *Elias-Zacarias*, 502 U.S. 478 (1992); INS v. *Cardoza-Fonseca*, 480 U.S. 421 (1987); *INS v. Stevic*, 467 U.S. 407 (1984); *Matter of Fuentes*, 19 I&N Dec. 658 (BIA 1988);

*Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987).
　　Accordingly, the appeal will be dismissed.
　　**ORDER:**  The appeal is dismissed.

*DISSENTING OPINION:*　John W. Guendelsberger, Board Member, in which Paul W. Schmidt, Chairman, joined.
　　I respectfully dissent.


## I.  FACTS

The respondent in this case is a 51-year-old single woman from Nicaragua who came to the United States in April 1987 on a tourist visa and remained beyond the period of authorized stay.  She was served with an Order to Show Cause in August 1993.  At a hearing before an Immigration Judge held on August 17, 1994, the respondent presented claims for asylum and suspension of deportation.  The Immigration Judge found that the respondent had satisfied the 7-year physical presence requirement for eligibility for suspension of deportation.  He found, however, that although she had health problems involving her kidneys,  the condition complained of was not serious enough to amount to extreme hardship for suspension of deportation.  The Immigration Judge also found that the respondent had not shown eligibility for asylum or withholding of deportation.

The respondent filed an appeal of the Immigration Judge's decision on August 26, 1994.  In her appeal, the respondent challenges the denial of asylum, withholding of deportation, and suspension of deportation.  The only issue raised on appeal concerning suspension of deportation is the question of extreme hardship.

On September 30, 1996, over 2 years after the respondent's appeal, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") was enacted.[1]  Although not raised in this case, the Immigration and Naturalization Service has argued in other cases that the provisions of section 240A(d) of the Act (to be codified at 8 U.S.C. § 1229b(d)), which were enacted by the IIRIRA, should be applied retroactively.  Notably, the instant case is not one in which the Immigration Judge adjudicated the issue of physical presence after the enactment of the IIRIRA.  The Immigration Judge's determination was made in 1994.  Thus the actual issues raised on appeal in this case have been eclipsed by a question of applicability of recent legislation to an issue that all parties considered resolved over 2 years

---

[1]The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA") (enacted September 30, 1996).

ago.  This dissent addresses the issue of applicability of the IIRIRA provisions to the instant appeal.

## II.  ISSUE

The issue in this case is whether section 309(c)(5) of the IIRIRA, 110 Stat. at 3009-627, alters the general effective date provision in section 309(a) of the IIRIRA, 110 Stat. at 3009-625, for new section 240A(d).  All agree that section 309(c)(5) excepts section 240A(d) of the Act from the general rule in section 309(c)(1) of the IIRIRA, 110 Stat. at 3009-625, that title III-A provisions are inapplicable to cases pending on April 1, 1997.  The question is whether section 309(c)(5) applies as of the section 309(a) general effective date, April 1, 1997, or on the date of enactment, September, 30, 1996.

## III.  OVERVIEW

The majority reads section 309(c)(5) to counter both the section 309(a) general effective date and the 309(c)(1) general rule of nonapplicability.  In reaching this conclusion the majority reasons that Congress generally intended to limit suspension of deportation and that a "natural reading" of section 309(c)(5) calls for a restrictive interpretation.  The majority fails to consider the placement and purpose of section 309(c)(5) in the general structure of the section 309 effective date and transition rules and ignores the relevant legislative history. As one of six exceptions to the general rule of nonapplicability in section 309(c)(1), the more "natural reading" of section 309(c)(5) is that it is an exception to the nonapplicability  rule contained in section 309(c)(1). When section 309(c)(5) is read with regard to its place in the framework of section 309 and in light of its legislative history, it cannot be applied to any pending cases until after April, 1, 1997, the IIRIRA title III-A effective date. [2]

In this case, the respondent applied for suspension of deportation under the existing eligibility rules, submitted her evidence and met her burden of proof as to 7 years of continuous physical presence in 1994. Now, after having adjudicated the continuous physical  presence requirement, the rules have been changed and the Service seeks to relitigate the issue of continuous physical presence. This case falls squarely within the situation described in

---

[2]As pointed out in the dissenting opinion of Board Member Villageliu, even after April 1, 1997, there are certain pending cases which may not be affected by the section 240A(d)(1) directive, i.e., those pending cases which have not been initiated by a "notice to appear under section 239(a)."

*Landgraf v. USI Film Products,* 511 U.S. 244, 270 (1994), in which legislation "attaches new legal consequences to events completed before its enactment." Legislation which has such an effect may not be applied retroactively in the absence of a clear statutory directive. *Id.* Although the directive in section 309(c)(5) clearly alters the general rule of nonapplicability in section 309(c)(1), it does not change the effective date of section 240A(d) or any other provisions of the IIRIRA. Under such circumstances, *Landgraf* requires that the general effective date, April 1, 1997, control the applicability of new legislation to "events completed before its enactment."

## IV. THE NEW PROVISIONS OF THE IIRIRA

While this case was pending on appeal, the enactment of the IIRIRA created new provisions which will eventually replace the suspension of deportation provisions in section 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a) (1994), with a procedure to be known as cancellation of removal and adjustment of status.[3] *See* IIRIRA § 304, 110 Stat. at 3009-587. The requirements for cancellation of removal and adjustment of status for nonpermanent residents are patterned after those for suspension of deportation but contain heightened eligibility thresholds.[4]

Section 304 of the IIRIRA contains provisions which will limit the cumulation of time toward the physical presence requirement in the new procedure for cancellation of removal. *See* sections 240A(d)(1), (2) of the Act. In particular, section 240A(d)(1) provides that "[f]or purposes of this section, any period of continuous residence or *continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 239(a)*." (Emphasis added.)[5]

----

[3]Among other changes, the new law merges exclusion and deportation procedure into a new set of procedures to be known as removal proceedings which will be initiated by a "notice to appear" pursuant to new section 239(a) of the Act (to be codified at 8 U.S.C. § 1229(a)). Suspension of deportation will be gradually phased out under the IIRIRA and replaced with a form of relief from deportation to be known as cancellation of removal and adjustment of status. The provisions for cancellation of removal and adjustment of status do not apply to cases pending as of April 1, 1997, unless the Attorney General elects to exercise one of the two options described in sections 309(c)(2) or (3) of the IIRIRA, 110 Stat. at 3009-626. *See* IIRIRA § 309(c)(1).

[4]The requirement for continuous physical presence is increased from 7 years to 10 years; the showing of hardship is elevated from "extreme" to "exceptional and extremely unusual"; and hardship to the alien is eliminated from consideration. *Compare* section 244(a) of the Act *with* new section 240A(b)(1).

[5]Section 240A(d)(1) also deems continuous physical presence to have ended upon the commission of specified offenses. Section 240A(d)(2) provides that breaks in physical presence "in excess of 90 days or for any periods in the aggregate exceeding 180 days" will interrupt continuous physical presence.

The majority finds that this limitation in section 240A(d)(1) applies to the instant case. The majority reaches its conclusion by focusing upon language in section 309(c)(5) of the IIRIRA which states:

> Paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to notices to appear issued before, on, or after the date of the enactment of this Act.

If section 309(c)(5) is read in isolation, its "before, on, or after the date of enactment" language may suggest that section 309(c)(5) applies to any case pending after the IIRIRA's September 30, 1996, enactment date. Before jumping to such a conclusion, however, there is a threshold question as to the effective date of section 309(c)(5) itself. This question must be answered by considering the language and place of section 309(c)(5) in the overall structure of the section 309 effective date and transition rules. *See K Mart Corp. v. Cartier Inc.*, 486 U.S. 281, 291 (1989) (holding that construction of language which takes into account the design of the statute as a whole is preferred).

## V. STRUCTURAL ANALYSIS OF SECTION 309 OF THE IIRIRA

Section 309 of the IIRIRA provides a complex framework of effective dates and transition rules. Examination of section 309 reveals two benchmarks concerning the phasing-in of the various provisions of title III-A:

> 1. The general effective date in section 309(a): April 1, 1997;
> 2. A general rule of nonapplicability in section 309(c)(1): Even after April 1, 1997, new rules do not apply to cases that were pending on the effective date.

The majority ignores the significance of the second benchmark in analyzing the language of section 309(c)(5). As explained below, section 309(c)(5) sets forth an exception only to the second benchmark and is inapplicable to any pending cases until the general effective date of the Act.

### A. The General Effective Date in Section 309(a).

The general rule for the effective date of sections 301 through 309 of the IIRIRA is established in section 309(a), as follows:

> Except as provided in this section and sections 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5) of this division, this subtitle and the amendments made by this subtitle shall take effect on [April 1, 1997] (in this title referred to as the "title III-A effective date").

IIRIRA § 309(a)(emphasis added).

This overarching effective date provision in section 309(a) applies to all of the amendments contained in IIRIRA section 304, including the new rules for continuous physical presence in section 240A(d) of the Act.

### B. The General Rule of Inapplicability in Section 309(c)(1).

The transition rules for the new IIRIRA provisions are contained in section 309(c). Section 309(c) contains a general rule of inapplicability in paragraph (1) and a number of exceptions to that rule in paragraphs (2) through (7). The general rule of inapplicability in section 309(c)(1) of the IIRIRA provides as follows:

> GENERAL RULE THAT NEW RULES DO NOT APPLY. — *Subject to the succeeding provisions* of this subsection, in the case of an alien who is in exclusion or deportation proceedings before [April 1, 1997,]—
> (A) the amendments made by this subtitle *shall not apply*, and
> (B) the proceedings . . . *shall continue to be conducted without regard to such amendments.*

IIRIRA § 309(c)(1) (emphasis added). Thus the general rule of inapplicability contained in section 309(c)(1) is that any alien in deportation proceedings before April 1, 1997, will continue to have the benefit of the rules for section 244(a) suspension of deportation *even after the April 1, 1997, effective date.*

After April 1, 1997, there will be a two-track system of relief from deportation. Aliens in deportation proceedings prior to April 1, 1997, will continue to be eligible for suspension of deportation under the requirements now contained in section 244(a) of the Act. Aliens placed in deportation proceedings after April 1, 1997, will be subject to the elevated eligibility requirements of cancellation of removal and adjustment of status in new section 240A(b). As discussed in Board Member Villageliu's dissent, the Attorney General may, after April 1, 1997, elect to apply the new procedures of title III-A of the IIRIRA to cases which were initiated prior to April 1, 1997. *See* IIRIRA § 309(c)(2), which directs that in such circumstances the previously issued Order to Show Cause shall be "valid as if provided under section 239 of such Act."

### C. Exceptions to the Section 309(c)(1) General Rule of Inapplicability in Paragraphs (2)-(7).

Paragraphs (2) through (7) of section 309(c) spell out exceptions to the general rule in section 309(c)(1) that the new IIRIRA provisions are inapplicable even after April 1, 1997, to aliens in proceedings before April 1, 1997. Paragraphs (2) and (3) afford the Attorney General the option to elect to proceed under the new cancellation of removal provisions of the IIRIRA in specified cases. Paragraph (4) addresses judicial

review of exclusion and deportation proceedings. Paragraph (5) addresses suspension of deportation cases. Paragraph (6) addresses a new exclusion provision as applied to family unity cases. Paragraph (7) refers to ceilings on grants of suspension of deportation in any one fiscal year.

As discussed above, the language of section 309(c)(5) counters the general rule of inapplicability in section 309(c)(1). The heart of the issue in this case is whether section 309(c)(5) also alters the general effective date in section 309(a).

### D. The Reach of Section 309(c)(5) of the IIRIRA.

Some of the paragraphs of section 309(c) address events occurring prior to April 1, 1997. Section 309(c)(4) of the IIRIRA, 110 Stat. at 3009-626, for example, explicitly refers to cases in which "a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act."[6] Other paragraphs, such as (2), (3), and (6), apply only to events occurring after April 1, 1997. The Attorney General option to elect to apply new procedures in paragraph (2) is explicitly limited to cases in which an evidentiary hearing "has not commenced as of the title III-A effective date." Similarly, under paragraph (3), the Attorney General option to initiate new proceedings could not occur before the provisions for these proceedings take effect on April 1, 1997. Likewise, under paragraph (6), the new family unity exception to a new exclusion provision has no applicability until April 1, 1997.

Unlike the paragraphs described above, section 309(c)(5) is ambiguous as to whether it applies from the effective date or the enactment date. We know that section 309(c)(5) counters the general rule of inapplicability in section 309(c)(1) that proceedings underway before April 1, 1997, "*shall continue to be conducted* without regard to [IIRIRA title III-A] amendments." (Emphasis added.) The critical issue is whether section 309(c)(5) also countermands the section 309(a) general effective date. The majority attributes a double effect to section 309(c)(5) so that it changes not only the section 309(c)(1) general rule of inapplicability, but also the general effective date in section 309(a). The unresolved ambiguity presented by the language of section 309(c)(5) is whether it counters

---

[6]It should be noted that section 309(c)(4) instructs as to the applicability of provisions of the Immigration and Nationality Act in effect prior to passage of the IIRIRA in the case of final orders entered more than 30 days after the date of the enactment of the IIRIRA. Thus, section 309(c)(4) does not modify the effective date of any provisions of the IIRIRA relating to judicial review.

the section 309(a) effective date as well as the section 309(c)(1) rule of inapplicability.

Had Congress intended section 309(c)(5) to alter the general effective date as well as the general transition rule, it could have clearly so directed. See, for example, section 348(b) of the IIRIRA which, in amending section 212(h) of the Act, provides:

> The amendment made by subsection (a) **[A]** *shall be effective on the date of the enactment of this Act* and **[B]** shall apply in the case of any alien who is in exclusion or deportation proceedings as of such date unless a final administrative order in such proceedings has been entered as of such date.

IIRIRA § 348(b), 110 Stat. at 3009-639 (emphasis added). Clause A of section 348 explicitly states the effective date. Clause B of section 348 specifies which cases are affected on the effective date. Notably, section 309(c)(5) lacks a Clause A specifying an effective date. It contains only the Clause B instruction as to which cases are affected on the general effective date of the Act. Had Congress intended to alter the general effective date in section 309(c)(5), it could have followed the pattern used in section 348, and section 309(c)(5) would have read:

> Paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) **[A]** *shall be effective on the date of enactment and* **[B]** shall apply to notices to appear issued before, on, or after the date of the enactment of this Act.

Because of the omission of the above-emphasized language from section 309(c)(5), the general effective date of section 309(a) is not countermanded by the language of section 309(c)(5). See also the directives in section 308(d)(2)(D), "effective upon enactment of this Act" and in section 308(d)(5), "[e]ffective as of the date of the enactment of the Antiterrorism and Effective Death Penalty Act of 1996." The omission of such plain language in section 309(c)(5) negates the majority claim that this section alters the general effective date in section 309(a).

The majority claims that the "before, on, or after the date of enactment" clause in section 309(c)(5) would have no purpose were it not meant to alter the general effective date in section 309(a). But in making this statement, the majority overlooks or ignores the directives in sections 309(c)(1)(A) and (B) that none of the new suspension rules shall apply even after the general effective date, April 1, 1997. Thus, section 309(c)(5) is not surplusage. It counters the general rules of sections 309(c)(1)(A) and (B) in cases in which deportation proceedings were commenced before, and remain pending after, April 1, 1997.

For these reasons, section 240A(d) is not effective until April 1, 1997, and section 309(c)(5) does not apply to suspension applications which are considered prior to April 1, 1997.

## VI.  LEGISLATIVE HISTORY

As originally enacted, the general transition rule in section 309(c)(1) applied "to the case of an alien who is in exclusion or deportation proceedings *as of* the title III-A effective date."  (Emphasis added.)  Eleven days after the IIRIRA's enactment, a technical amendment struck and replaced the term "as of" with the term "before."  See Extension of Stay in the United States for Nurses Act,  Pub. L. No. 104-302, § 2, 110 Stat. 3656 (1996).

It was clear under the unamended version of section 309(c)(1),  that section 309(c)(5) applied only after April 1, 1997, because one would not know whether an alien was in proceedings "as of" that date until April 1, 1997, arrived.   This being so, the majority's position can stand only if the technical amendment, enacted on October 11, 1997, was meant to bring forward the section 309(c)(5) effective date from April 1, 1997, to the date of enactment of the IIRIRA, September 30, 1996.  The majority has failed to demonstrate such an intent and the legislative history indicates otherwise.

The legislative history of the technical amendment strongly suggests that it was not meant to alter the April 1, 1997, effective date for section 309(c)(5) established in the IIRIRA.  In explaining the technical amendment, Representative Lamar Smith, Chairman of the Subcommittee on Immigration and Claims of the House Judiciary Committee,  noted that the "*as of* the effective date"  language in IIRIRA section 309(c)(1) conflicted with the reference in section 309(c)(4) to cases in which final orders were rendered "30 days after the date of the enactment," thus delaying the prohibition of judicial review in such cases until after title III's general effective date.  142 Cong. Rec. H12,293-01 (daily ed. Oct. 4, 1996)  (statement of Rep. Smith) (emphasis added).

Representative Smith stressed that it "was the clear intent of the conferees that, *as a general matter*, the full package of changes made by this part of title III [a]ffect those cases *filed in court after the enactment of the new law, leaving cases already pending before the courts to continue under existing law."  Id.*  (emphasis added). After noting that some reforms in title III were to be "accelerate[d]," Representative Smith referred specifically to section 309(c)(4) which "calls for accelerated implementation of some of the reforms made in section 306 regarding judicial review."  *Id.*  There is no mention of section 309(c)(5) or changes to rules for suspension of deportation.

Representative Smith referred to the legislative history in the Joint Explanatory Statement of the Committee of Conference in explaining the impact of the technical amendment. *See* H.R. Rep. No. 104-828 and 142 Cong. Rec. H10,841-02 ("Joint Explanatory Statement"). The Joint Explanatory Statement instructs that section 309(c) "provides for the transition to new procedures in the case of an alien already in exclusion or deportation proceedings *on the effective date.*  In general, the amendments made by this subtitle shall not apply and the procedures (including judicial

review) shall continue to be conducted without regard to such amendments." *See* Joint Explanatory Statement, *supra*, § 309 (emphasis added).

The technical amendment was needed to correct a specific and irreconcilable conflict in the language of subsections (c)(1) and (c)(4) of section 309. Had Congress intended to go so far as to alter the effective date for the other paragraphs of section 309(c), it could have done so easily and simply by including language making all of the paragraphs of section 309(c) applicable as of the date of enactment of the IIRIRA. Congress did not do so, and in light of the explanation by Representative Smith for the changes made, the technical amendment should not be read to accomplish a sweeping change in the established effective date without clear language calling for such a result.[7]

## VII.  THE LANDGRAF PRESUMPTION AGAINST RETROACTIVE LEGISLATION

The United States Supreme Court in *Landgraf v. USI Film Products, supra*, addressed the question of retroactive application of new statutes in light of competing canons of statutory construction. The Court noted that "the presumption of retroactive legislation is deeply rooted in our jurisprudence" and that retroactive effect will not be presumed in the absence of "clear intent" by Congress. *Landgraf, supra*, at 265, 272-73. As the Court noted, "[C]lear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Id*. at 272-73.

A statute has retroactive effect when "the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. In such a situation, it is not enough to search for a reasonable construction, or a construction consistent with the perceived restrictive goals of the legislation, or with a "natural reading." The application of the new rules in section 240A(d) to this case would alter the determination made months before the enactment of the IIRIRA that the respondent in this case had satisfied the eligibility requirement for continuous physical presence for suspension of deportation.

Here we have clear language setting an effective date on April 1, 1997. Under the ruling in *Landgraf*, the general effective date in section 309(a)

---

[7]The legislative history does not offer specific guidance as to the "before, on, or after" language contained in section 309(c)(5). *See* 142 Cong. Rec. S4730-01, § 150, (daily ed. May 6, 1996) (relating to effective date of new "continuous physical presence" requirement in Senate version of the H.R. 2202 bill); 142 Cong. Rec. H2378-05, § 309 (daily ed. Mar. 19, 1996) (relating to transition rule with regard to suspension of deportation in House version of the H.R. 2202 bill).

can only be drawn forward by a clear and plain expression of congressional intent to do so. In the absence of clear language advancing the effective date, the general effective date of section 309(a) must be applied.

In addition to the presumption of nonretroactivity, this case involves the question of deportation, an area in which doubts as to the effective date of section 309(c)(5) are to be construed in favor of the alien to take effect on the IIRIRA's general effective date. *See INS v. Errico*, 385 U.S. 214, 225 (1966) (construing section 241(f) of the Act, 8 U.S.C. § 1251(f) (1966), and indicating that doubts as to the correct construction of the statute should be resolved in the alien's favor even when interpreting provisions related to relief from deportation); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) (noting the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien"); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948) (stating that any doubts regarding the construction of the Act are to be resolved in the alien's favor); *Matter of Tiwari*, 19 I&N Dec. 875 (BIA 1989).

## VIII.  THE FEDERAL CIRCUIT COURT  DECISIONS

Two federal circuit courts have recently rendered decisions in cases construing the effective date and transition rules of IIRIRA section 309. Both decisions have ruled that broad language altering the section 309(c)(1) rule of nonapplicability of the IIRIRA rules to pending cases did not modify the general effective date provision in section 309(a).

The United States Court of Appeals for the Ninth Circuit has directly addressed the issue presented in this case and held that  under section 309(c)(5), section 240A(d) of the Act has no effect until April 1, 1997. *Astrero v. INS*, 104 F.3d 264 (9th Cir. 1996).  The court in *Astrero* reasoned that the fact that under section 309(c)(5) the "new requirements may apply retroactively to trigger cutoff dates based on notices to appear issued prior to April 1, 1997, does not change the effective date itself." *Id.* at 266.  In other words, section 309(c)(5) is retroactive from the point in time that provision takes effect, i.e., April 1, 1997.

Similarly the United States Court of Appeals for the Seventh Circuit recently addressed the question whether section 306(c) of the IIRIRA, 110 Stat. at 3009-612, changed the effective date provision in section 309(a) as well as the general rule of inapplicability in section 309(c)(1). *Lalani v. Perryman,* 105 F.3d 334 (7th Cir. 1997).

*Lalani* involved an appeal from a district court decision upholding a district director's denial of a request for voluntary departure.  The issue was whether the IIRIRA's  new limit on court review enacted as section 242(g) of the Act (to be codified at 8 U.S.C. § 1252(g)) takes effect on the date of enactment or on the effective date.  In regard to applicability of section

242(g), section 306(c)of the IIRIRA provided that the section should apply "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act." (Emphasis added.)

The Immigration and Naturalization Service argued that this language in section 306(c) made section 242(g) immediately applicable from the date of enactment, thus divesting the courts of jurisdiction over certain forms of litigation. The Seventh Circuit rejected the Service reading, and held that section 242(g) takes effect on April 1, 1997, according to the general effective date provision in section 309(a). In so finding, the court reasoned that the reference to subsection (g) in section 306(c) "is meant only to provide an exception to *section 309(c)'s* general principle of non-retroactivity, so that when IIRIRA comes into effect on April 1, 1997, subsection (g) will apply retroactively, unlike the other subsections." *Lalani v. Perryman, supra,* at 336 (emphasis added).

Notably, *Lalani* uses the same structural approach to interpreting sections 309(a) and (c) as does the Ninth Circuit Court of Appeals in *Astrero.* The court in Lalani also relied upon the presumption against advancing the general effective date in the absence of clear language when "the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Products, supra*, at 270.

Unfortunately, the majority decision in this case creates a nationwide split in the treatment of applicants for suspension of deportation in pending deportation cases. In the Ninth Circuit, and likely in the Seventh Circuit, the courts have recognized that section 309(c)(5) cannot be interpreted to take effect prior to April 1, 1997. Without better reasons than those expressed in the majority decision, this Board should not reach a result which imposes an earlier effective date in other jurisdictions nationwide.

## IX. CONCLUSION

For the reasons stated above, the provisions of section 240A(d) of the IIRIRA should not apply to the continuous physical presence determination in this case. This Board should, therefore, review the issue of extreme hardship raised on appeal.[8]

*DISSENTING OPINION:* Gustavo D. Villageliu, Board Member

---

[8]I agree with the views expressed in the dissents of Board Members Villageliu and Rosenberg.

I respectfully dissent. While I fully agree with the dissent of Board Member Guendelsberger, as to the statutory scheme of section 309(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-625 ("IIRI-RA") and its effective date, I write separately to emphasize two points on which I disagree with the majority's conclusions.

One, the interruption of continuous physical presence applies only when an alien is placed in removal proceedings and seeks cancellation of such removal under the new procedures. Two, the language "notice to appear issued before, on, and after enactment" relied upon by the majority is merely a jurisdictional provision precluding jurisdictional challenges when an alien is placed under the new removal procedures by either the notice initiating such removal proceedings under section 239(a) of the Immigration and Nationality Act (to be codified at 8 U.S.C. § 1229(a), or the notice that the Attorney General has elected to convert a previously issued Order to Show Cause into a notice to appear in removal proceedings. The latter option gives sufficient meaning to the language "before enactment" without adopting an overbroad interpretation inconsistent with the statutory language and its legislative history. Section 309(c)(2) of the IIRI-RA, 110 Stat. at 3009-626, specifies that the notice of hearing issued pursuant to section 235 or 242 of the Act, 8 U.S.C. §§ 1225 or 1252 (1994), shall be valid as if provided under section 239.

## I. SECTION 240A(d)(1) DOES NOT INTERRUPT CONTINUOUS PHYSICAL PRESENCE IN ALL PENDING CASES

Section 240A(d)(1) of the Act (to be codified at 8 U.S.C. § 1229b(d)(1)) does not mandate that all notices to appear interrupt continuous physical presence. It specifically limits its application to cases where a notice to appear under section 239(a), placing the alien in removal proceedings has been issued. The pertinent language of section 240A(d)(1) of the Act, as enacted by the IIRIRA states: "For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear *under section 239(a)* . . . ." (Emphasis added.) The majority unconvincingly violates the first rule of statutory construction that legislative intent should be ascertained from the plain meaning of the statute, by dismissing these crucial last three words, which clearly limit the class of aliens to which it applies. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).

In addition, the majority opinion violates the rule of statutory construction that no provision of law should be construed so as to render a word or clause surplusage. *Kungys v. United States,* 485 U.S. 759 (1988). It is also inconsistent with protecting settled expectations when new provisions

attach new legal consequences to past events, as a safeguard against unfairness in retroactivity, and with the rules for interpreting immigration statutes consistently invoked by the Supreme Court and this Board, as pointed out in the dissent of Board Member Rosenberg. *Landgraft v. USI Film Products, Inc.,* 511 U.S. 244 (1994); *INS v. Errico*, 385 U.S. 214, 225 (1966); *Barber v. Gonzales*, 347 U.S. 637, 642-43 (1954); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948); *accord INS v. Cardoza-Fonseca, supra*, at 449, and cases cited therein.

Applying the well-settled rules of statutory construction, expressio unius est exclusio alterius and ejusdem generis, to the statutory language, which states that all notices to appear are subject to the rules prescribed in section 240A(d)(1) of the Act, means that only a notice to appear under section 239(a) automatically interrupts physical presence, and by implication other notices to appear do not, unless the Attorney General chooses to exercise the option provided under section 309(c)(2) of the IIRIRA. *See Matter of Lazarte*, 21 I&N Dec. 3264 (BIA 1996); *Matter of Beltran*, 20 I&N Dec. 521 (BIA 1992); 2A N. Singer, *Sutherland Statutory Construction* §§ 47.17, 47.23 (4th ed. 1985). This limited interpretation would be consistent with the language of sections 309(c)(2) and (3) of the IIRIRA, which allow the Attorney General to treat a notice of hearing under sections 235 or 242 as if under section 239 after a 30-day notice to the alien, or to terminate proceedings and proceed instead under the new procedures. Section 309(c)(2) specifically states that "[i]f the Attorney General makes such election, the notice of hearing provided to the alien under section 235 or 242(a) of such Act shall be valid as if provided under section 239." Note, however, that the option under section 309(c)(2) is limited to cases where an evidentiary hearing has not commenced before its effective date. Similarly, the Attorney General's option to terminate proceedings under section 309(c)(3) and proceed under the new standards is limited to cases in which there has been no final administrative decision. Neither limitation makes sense under the majority's ruling.

## II. SECTION 309(c)(5) IS ONLY A JURISDICTIONAL PROVISION WHICH PRESCRIBES THAT CONTINUOUS PHYSICAL PRESENCE MAY BE INTERRUPTED

The majority's reliance on the language of section 309(c)(5) of the IIRIRA, 110 Stat. at 3009-627, for its overbroad interpretation of the interruption of continuous physical presence rules prescribed under section 240A(d)(1) of the Act is similarly unconvincing. Section 309(c)(5) is a jurisdictional provision, directing to the rules for interrupting physical presence and precluding jurisdictional challenges to their potential retroactivity. All that section 309(c)(5) prescribes is that an Order to Show Cause may

interrupt continuous physical presence under section 240A(d)(1). Section 309(c)(5) of the IIRIRA states:

> Paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to notices to appear issued before, on, or after the date of the enactment of this Act.

The key passage to the majority's opinion is that "in order for the section 309(c)(5) exception to the transitional rule to have any independent meaning at all, it must apply to aliens served with an Order to Show Cause prior to the date of enactment" and therefore, the retroactive interruption of physical presence applies automatically to all cases. That is simply not true, and assumes that section 309(c)(5) is an exception to the transitional rules. It is also an incomplete syllogism that ignores the fact that the language of sections 240A(d)(1) and (2) of the Act describe a limited class of aliens whose continuous residence or physical presence is deemed to be interrupted. It does not interrupt continuous physical presence in all cases.

No one disputes that the section 240A(d)(1) rules are applicable to Orders to Show Cause issued before enactment of the Act. Our dispute is as to what the "rules" command, and their effective date.

I also do not dispute that the section 240A(d)(1) rules may effect substantive changes regarding eligibility for relief in cases pending before the April 1, 1997, effective date of the IIRIRA. My argument is, instead, that such substantive changes take place when the alien is placed in removal proceedings, and seeks cancellation of such removal. That is what the statute mandates and the legislative history reflects.

Section 309(c)(5) of the IIRIRA, as enacted, does not state that the interruption of continuous physical presence applies to all cases, as it easily could have and once did, as discussed below. Instead, it states that the rules in sections 240A(d)(1) and (2), as to whose physical presence is interrupted, applies to all cases. It directs us to section 240A(d)(1) of the Act and thereby precludes jurisdictional challenges by aliens who lose their eligibility for suspension of deportation in removal proceedings and challenge its ex post facto application. The Joint Explanatory Statement of the Committee of Conference, H.R. Rep. No. 104-828 ("Joint Explanatory Statement"), on section 309 of the IIRIRA, while discussing the Attorney General's discretionary election to apply the new proceedings, specifically stated that although the IIRIRA's amendments did not apply to pending cases, its language was meant to retain jurisdiction over aliens served with notices of hearing and Orders to Show Cause.

If an alien is placed in deportation proceedings pursuant to an Order to Show Cause before the IIRIRA takes effect, and is subsequently given a notice under section 309(c)(2) that the Attorney General intends to treat his Order to Show Cause as a notice to appear under section 239(a) of the Act, then he is subject to the interruption of continuous physical presence man-

dated by section 240A(d)(1). This limited class of aliens for whom the Attorney General exercises the section 309(c)(2) option is clearly made up of "alien(s) served with a notice to appear (treated as if) under section 239(a)." Therefore, it is not true that section 309(c)(5) has no meaning unless we adopt the overbroad majority ruling in this case. As explained in Board Member Guendelsberger's dissent, the exceptions to the April 1, 1997, effective date of the IIRIRA in sections 309(c)(2), et seq., are meant to address the rules applicable to cases pending on April 1, 1997, not September 30, 1996, unless another provision of the IIRIRA specifically directs otherwise. Astrero v. INS, 104 F.3d 264 (9th Cir. 1996); *accord Lalani v. Perryman*, 105 F.3d 334 (7th Cir. 1997); *Rodriguez v. Wallis,* 957 F. Supp. 1267 (S.D. Fla. 1997).

A section 239(a) notice to appear initiates removal proceedings and interrupts continuous physical presence pursuant to section 240A(d)(1) for purposes of cancellation of removal. Similarly, a properly exercised notice of election under section 309(c)(2) subjects a deportable alien to removal procedures, which the index to IIRIRA at title III, subsection A, specifies are sections 239, et seq., of the Act.[1] In removal procedures, the formerly deportable alien is subject to the section 240A(d)(1) interruption of continuous physical presence because section 309(c)(5) specifies that such rules apply to notices to appear issued before, on, or after enactment of the IIRIRA. The Order to Show Cause is deemed a notice to appear under section 239(a) because the Attorney General has elected to proceed against him pursuant to section 239, et seq., the language of section 240A(d)(1) limits such an interruption to aliens against whom a notice to appear under section 239(a) has been issued, and section 309(c)(2) specifies that the Order to Show Cause has the same jurisdictional effect as a notice under section 239.

### III.  LEGISLATIVE HISTORY

The legislative history of the IIRIRA is consistent with the above interpretation and inconsistent with the majority's interpretation. It reflects that the interruption of continuous physical presence was initially introduced as applicable to removal proceedings, through section 240A(d)(1), and to suspension of deportation applications through section 309(c)(5) as part of the transitional rules for pending cases. Section 309(c)(5) then stated, "In applying section 244(a) of the Immigration and Nationality Act (as in effect

---

[1]The Supreme Court has ruled that the title of a statute or section can aid in resolving an ambiguity in the legislation's text. *INS v. National Center for Immigrants' Rights, Inc.,* 502 U.S. 183, 189 (1991); *Mead Corp. v. Tilley*, 490 U.S. 714, 723 (1989); *FTC v. Mandel Bros., Inc.,* 359 U.S. 385, 388-89 (1959); *cf.* 2A Singer, *supra*, §§ 47.01, 47.03, 47.14.

before the date of enactment of this Act) with respect to an application for suspension of deportation which is filed before, on, or after the date of the enactment of this Act and which has not been adjudicated as of 30 days after the date of the enactment of this Act, the period of continuous physical presence under such section shall be deemed to have ended on the date the alien was served an order to show cause pursuant to section 242A of such Act . . . ." HR 2202, § 309, *available in* Congressional Quarterly's Washington Alert *and* Westlaw, at 1995 CQ US HR 2202 (Aug. 4, 1995).

The bill was subsequently reported on March 4, 1996, favorably by the House Judiciary Committee with identical language in section 240A(d)(1), but section 309(c)(5) had been amended to apply the section 240A(d)(1) rules to suspension of deportation applications where the notice to appear was issued after enactment of the Act. The Committee Report, H.R. Rep. No. 104-469(I) (1996) specifically stated that the "continuous physical presence terminates on the date a person is served a notice to appear *for a removal proceeding*," id. § 304  (emphasis added), and also stated that the rules of section 240A(d)(1) applied "as a criterion for eligibility *for cancellation of removal*" to "any notice to appear (including an Order to Show Cause under current section 242A) issued after the date of enactment of this Act." *Id*. § 309 (emphasis added).

On March 7 and 8, 1996, the bill was withdrawn from several committees and reported from several other committees with amendments. The bill was reported to the entire House on March 8, 1996, had identical language in section 240(d)(1), limiting its application to cases where a section 239(a) notice to appear had been issued and section 309(c)(5) retained the language about the applicability to suspension of deportation applications in its heading, but deleted the operative language that the interruption of continuous physical presence upon issuance of an Order to Show Cause applied to section 244(a) applications. It therefore now meant that suspension of deportation applicants were subject to the section 240A(d)(1) rules which, as discussed above, interrupted continuous physical presence only if a notice to appear under section 239(a) placing the alien in removal proceedings was issued. This was the bill passed by the House of Representatives on March 21, 1996, after other amendments on the House floor. *See* HR 2202, *available in* Congressional Quarterly's Washington Alert *and* Westlaw at 1996 CQ US HR 2202 (engrossed Mar. 21, 1996).

The bill was placed in the calendar of the United States Senate on April 15, 1996, after its introduction by Senator Orrin Hatch of Utah as S. 1664 on April 10, 1996. *See* S. 1664, *available in* Congressional Quarterly's Washington Alert *and* Westlaw at 1996 CQ US S 1664 (reported in Senate Apr. 10, 1996). A critical difference in this bill is that section 244 of the Immigration and Nationality Act of 1952, as amended, would be replaced by section 150(b) of that bill providing a new section 244 entitled "Cancellation of Deportation; Adjustment of Status; Voluntary Departure."

Section § 150(b) of that bill provided that continued physical presence was deemed to end when an Order to Show Cause was issued. *Id*. § 150(b). However, section 150(d) of the bill, entitled "Effective Dates," limited its application by stating that the "amendments made by subsection (b) shall take effect on the date of the enactment of this Act, and shall apply to all applications for relief under section 244 of the Immigration and Nationality Act (8 U.S.C. 1254), except that, for purposes of determining the periods of continued residence or continuous physical presence, the amendments made by subsection (b) shall apply to all aliens upon whom an order to show cause is served on or after the date of the enactment of this Act." *Id*. at § 150(d).

On May 2, 1996, the Senate passed S. 1664 as an insert to H.R. 2202 and sent it to the House of Representatives for concurrence. On May 20, 1996, the House refused to concur in the Senate amendments and the bill was referred to the Conference Committee. On September 25, 1996, the House agreed to the Conference Committee Report on the language of the IIRIRA. On September 28, and 30, 1996, the House of Representatives and the Senate, respectively, agreed to the language of the IIRIRA, as finally enacted, and it was signed by the President into law as part of the fiscal year 1997 spending measure for the federal government that same day.

In short, the language of the IIRIRA, as finally enacted, retained the "notice to appear under section 239(a)" language of section 240A(d)(1); deleted the operative language applying the interruption of continuous physical presence in section 244(a) applications in the original section H.R. 2202, section 309(c)(5), and S. 1664, section 244(a)(2)(A); rejected the language in the Senate bill limiting the interruption of continuous physical presence to cases initiated after the enactment of the IIRIRA; and added the "before, on, or after" language to section 309(c)(5). Consequently, it is clear that, pursuant to sections 240A(d)(1) and 309(c)(5), the interruption of continuous physical presence applies to all cancellation of removal applications, regardless of how and when they were initiated, and does not apply to suspension of deportation cases remaining in deportation proceedings. The applicability to suspension of deportation applications was deleted and the section 239(a) limitation was retained.

The interpretation above is further supported by the Joint Explanatory Statement. It explains that "[s]ection 240A(d) provides that the period of continuous residence or physical presence ends when an alien is served a notice to appear under section 239(a) (for the commencement of removal proceedings under section 240)." Joint Explanatory Statement, *supra,* § 240A(d). The very next paragraph further explains that the section 240A(e) limitation on the number of grants per fiscal year applies to both cancellation of removal and suspension of deportation. *Id*. § 240A(e). This specificity indicates that Congress was knowingly referring to both forms of relief distinctively and refutes the majority's assertion that an Order to

Show Cause and a notice to appear under section 239(a) were synonymous terms with no substantive difference. The legislative history states that the rules under section 240A(d)(1) regarding continuing physical presence applied as a criterion of eligibility for cancellation of removal. *Id*. § 309. It also states that the reforms end "the accrual of time-in-residence on the date an alien is placed into removal proceedings." H.R. Rep. No. 104-879 (1997), *available in* 1997 WL 9288. Finally, the committee specified, when discussing the purpose of section 309(c), that it was intended to retain jurisdiction over cases pending when the IIRIRA was enacted, further suggesting its jurisdictional nature that did not effect substantive changes on eligibility for relief absent a specific directive to that effect elsewhere in IIRIRA. Joint Explanatory Statement, *supra*, § 309.

The majority's contention that its "natural reading" of the statutory language is consistent with the legislative intent "to terminate immediately the accrual of time for suspension eligibility" is illogical. Such an immediate termination of accrual time is more consistent with a prospective application of the interruption of physical presence rule. Similarly, the majority's argument that the immigration reforms were motivated by a desire to remove the incentive for aliens to prolong their cases by ending the accrual of time for suspension is also more consistent with a prospective application. How can you dissuade someone from doing something already done?

The majority's assertion that the reconciliation effected by Conference Committee was between two bills prescribing the interruption of continuous physical presence in suspension cases begs the question. Section 309(c)(5) of the House bill, H.R. 2202, as passed on March 8, 1996, had already deleted the operative language interrupting physical in determining eligibility for suspension of deportation, and the interruption was described only as applicable as a criterion for cancellation of removal. The recession by the Senate to the language of section 309 in the House bill thereby eliminated the last remaining operative language which would apply the interruption of physical presence in suspension of deportation determinations.

Sections 309(c)(1)(A) and (B) of the IIRIRA explicitly state that regarding aliens already in proceedings as of its effective date (April 1, 1997), its provisions do not apply and the proceedings shall continue to be conducted without regard to such amendments, except as to the limited classes of cases described in subsection (c). This language further suggests that as to aliens already in proceedings the provisions should be construed narrowly in accordance with the traditional rules of statutory interpretation. I do not question the power of our government to repeal the rights of aliens whose applications to remain here are pending. However, such a repeal must be clearly expressed in the statute and not discerned from irrelevant implications inconsistent with the statutory language and its legislative history. *Matter of Grinberg*, 20 I&N Dec. 911, 912-13 (BIA 1994), and cases cited therein; 1A Singer, *supra*, §§ 23.09, 23.10.

If the words "under section 239(a)" were mistaken surplusage they could have easily been deleted when Congress corrected section 309(c)(1) in the Extension of Stay in the United States for Nurses Act, Pub. L. No. 104-302, 110 Stat. 3656 (1996)[2]. Congress did not, and we should not by administrative fiat effectively deprive eligible aliens of their rights to be heard on their suspension applications by imposing the inapplicable interruption rule. The majority takes the curious position that it need not rely on the language of the statute nor its legislative history, and that it cannot accept the reasoning of all the courts that have interpreted the IIRIRA since it was enacted.[3] I dissent from such an unduly expansive view of our authority under 8 C.F.R. § 3.1(d) (1996).

*DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully dissent.

I join the well-reasoned dissents of my colleagues John Guendelsberger and Gustavo Villageliu, each of whom thoughtfully and correctly interprets the statutory language and legislative history to favor treating section 309(c)(5) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-627 ("IIRIRA"), as a prospective rule of transition, applicable only after April 1, 1997, in appropriate cases. As their opinions articulate, principles of statutory interpretation and controlling law warrant our reaching a conclusion other than the one adopted by the majority in this closely split decision.

Although the majority may seek to cloak its argument within the premise that the language interpreted here is plain, obviously it is not. Theoretically, when the language is plain, we are to give effect to the intent of Congress by giving the words used their ordinary meaning. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984); *Matter of Shaar,* 21 I&N Dec. 3290 (BIA 1996) (stating that when statutory language is plain that is the end of the inquiry).

---

[2]Instead, Representative Lamar Smith, Chairman of the Subcommittee on Immigration and Claims of the House Judiciary Committee, and the lead author of the IIRIRA, reaffirmed the Joint Explanatory Statement as an accurate reflection of the views of the House of Representatives and Senate conferees as to the interpretation of the IIRIRA section 309 transitional rules. *See* 142 Cong. Rec. H12293-01 (daily ed. Oct. 4, 1996); *cf.* 2A Singer, *supra,* § 48.14.

[3]The majority uses the deleted operative language of the original section 309(c)(5) introduced on August 4, 1995, as evidence of legislative intent that the interruption of continuous physical presence applies automatically to all Orders to Show Cause. To the contrary, such deleted text should be treated as evidence that Congress did not intend its applicability. 2A Singer, *supra*, §§ 48.04, 48.18.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra,* teaches that when Congress has not spoken plainly, and in that way ended the inquiry, legislative history may be determinative. *Id.* at 843-44. It is also true that even in determining the plain meaning of the words in a statute, and thereby the intent of Congress, we may look to legislative history. *INS v. Cardoza-Fonseca,* 481 U.S. 421 (1987).

In either case, reliance on legislative history does not mean that an agency can properly rely on statements that may have been made by individual legislators to the media or even offered as individual points of view on the floor of Congress. What may have been intended by one supporter of an enactment may not at all be the reason which prompted the vote of another supporter. Certainly, consideration of legislative intent does not mean giving weight to what an individual adjudicator may perceive as being Congress' intent.

Furthermore, we conduct our interpretation of statutory language mindful of the canons of construction. To my knowledge, Congress has not yet overridden the holdings of many venerable Justices of the Supreme Court who have noted that deportation is a harsh result, similar to exile. *Bridges v. Wixon*, 326 U.S. 135, 154 (1945) (stating that deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom"); *see also Fong Haw Tan v. Phelan*, 333 U.S. 6 (1948) (recognizing that deportation is the equivalent of banishment); *Jordan v. De George,* 341 U.S. 223 (1951) (equating deportation with a sentence to life in exile); *Ng Fung Ho v. White*, 259 U.S. 276 (1922) (describing deportation as akin to the loss of property or life or all that makes life worth living).

Given these harsh consequences, when faced with a choice between two readings of a deportation-related provision, the courts and, until now, this Board have relied upon the sound principle that we resolve doubts in statutory construction in favor of the alien. *INS v. Cardoza-Fonseca, supra; Barber v. Gonzales*, 347 U.S. 637, 642 (1954); *Fong Haw Tan v. Phelan, supra,* at 10; *INS v. Errico*, 385 U.S. 214 (1966); *Matter of Tiwari*, 19 I&N Dec. 875, 881 (BIA 1989).

Congress has not legislated away the long-accepted canon of construction that ambiguities in deportation statutes are to be construed in favor of the alien. And this is not an invitation to do so, as any such attempt would be likely to clash with the due process clause of the Fifth Amendment of the United States Constitution. This critical canon also is known as the "rule of lenity." As a practical matter, it means that in deportation matters, when the law is less than clear, the benefit of the doubt goes to the noncitizen.

My colleagues in the majority, whom I am certain are well aware of this canon, nonetheless have chosen to overlook it in favor of acceding to what they apparently view as the harsh, anti-alien legislative intent of the statute, mandating and supporting their conclusion. I do not suggest that they har-

bor any ill will towards noncitizens.  I simply am forced to conclude that in their opinion today, they communicate the message that, after the IIRIRA, the benefit of the doubt has been turned on its head.  Like Alice in *Through the Looking Glass*, what was the benefit of the doubt, now has become, the doubt that any alien should receive a benefit.

I dissent from such an interpretation.

*DISSENTING OPINION:* Fred W. Vacca, Board Member

I respectfully join the dissents of Board Members John W. Guendelsberger, Lory D. Rosenberg, and Gustavo D. Villageliu